# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**CAROLYN DAVIS,**

        **Plaintiff,**

**v.**                                                 **Case No: 6:18-cv-695-Orl-40DCI**

**CEO RECRUITING, INC.,**

        **Defendant.**

## REPORT AND RECOMMENDATION

This cause comes before the Court for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE TO THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NORTH CAROLINA (Doc. 18)** |
| **FILED:** | **July 17, 2018** |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

**I.  Background**

This case stems from Plaintiff's employment with Defendant, a recruitment and staffing company incorporated in North Carolina.  Doc. 1 (the Complaint).  In her Complaint, Plaintiff alleges that she was employed as a senior recruit manager in Orange County, Florida between February 2015 and September 2017.  *Id*. at ¶¶ 2, 13, 31-32.  Plaintiff alleges that she routinely worked more than 40 hours per week but was not paid any overtime wages because Defendant misclassified her as an exempt employee under the Fair Labor Standards Act (FLSA).  *Id*. at ¶¶

28-29. Thus, Plaintiff claims that Defendant violated the overtime wage provision of the FLSA, 29 U.S.C. § 207. *Id*. at ¶¶ 30-37.

In response to the Complaint, Defendant filed a motion arguing that the case should either be dismissed for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) or, in the alternative, the case should be transferred to the Western District of North Carolina pursuant to 28 U.S.C. § 1404(a).  Doc. 18 (the Motion).  In support, Defendant filed a declaration from its owner and CEO, Deborah Millhouse, who, as discussed in more detail below, provided statements concerning Defendant's ties to North Carolina and Florida.  Doc. 18-1 at 1-5.[1]

In response to the Motion, Plaintiff filed a brief arguing that the Court has personal jurisdiction over Defendant and that the case should not be transferred to the Western District of North Carolina.  Doc. 21.  In support, Plaintiff filed a declaration, in which she discussed her work in Florida and Defendant's ties to Florida.  Doc. 21-1.[2]

**II.   Analysis**

Defendant raises two distinct arguments: 1) the Court lacks personal jurisdiction over Defendant; and 2) the case should be transferred to the Western District of North Carolina.  Doc. 18.  The undersigned will address each argument in turn.

---

[1] As discussed in more detail below, *see infra* p. 19 n.13, Defendant also attached Plaintiff's employment agreement to the Motion.  Doc. 18-1 at 6-13 (the Agreement).  However, aside from a brief discussion of the Agreement in a footnote, Doc. 18 at 4 n.2, Defendant does not appear to rely on the Agreement in support of its arguments to dismiss or transfer the case.

[2] Defendant filed an authorized reply to Plaintiff's response to the Motion.  Doc. 24.  Defendant does not provide any substantive argument in its reply but, instead, points to numerous factual assertions in Plaintiff's response that are not supported by any record evidence.  *Id*.  The undersigned has noted the unsupported factual assertions in Plaintiff's response and will not rely on those unsupported assertions in considering the Motion.  Instead, the undersigned will only consider those factual assertions that are supported by record evidence.

### A. Personal Jurisdiction

Defendant argues that the Court lacks both specific and general personal jurisdiction over Defendant and, in light of this position, does not address whether exercising personal jurisdiction over Defendant would offend the Due Process Clause of the Fourteenth Amendment. Doc. 18 at 6-9.

Plaintiff, unlike Defendant, addresses both prongs of the jurisdictional analysis. First, Plaintiff argues that the Court has specific personal jurisdiction over Defendant pursuant to Florida Statute § 48.193(1)(a)(1) and general personal jurisdiction over Defendant pursuant to Florida Statute § 48.193(2). Doc. 21 at 4-11. Second, Plaintiff argues that exercising personal jurisdiction over Defendant would not offend the Due Process Clause of the Fourteenth Amendment. *Id*. at 11-14.

A court undertakes a two-step inquiry in determining whether it can exercise personal jurisdiction over a nonresident defendant. *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 855 (11th Cir. 1990). First, the Court must determine whether the forum state's long-arm statute provides a sufficient basis for personal jurisdiction. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996). Second, if the Court finds that personal jurisdiction exists under Florida's long-arm statute, the Court "must determine whether sufficient minimum contacts exist between the defendant[ ] and the forum state so as to satisfy traditional notions of fair play and substantial justice under the Due Process Clause of the Fourteenth Amendment." *Id*. (internal quotation omitted).

A plaintiff claiming that the Court has personal jurisdiction over a nonresident defendant bears the initial burden of alleging sufficient facts in the complaint to establish a *prima facie* case of personal jurisdiction over the defendant. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274

(11th Cir. 2009). A *prima facie* case is established if plaintiff alleges enough facts to withstand a motion for directed verdict or judgment as a matter of law. *Meier ex rel. Meier v. Sun Intern. Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). If the defendant challenges jurisdiction by submitting affidavits containing specific averments contradicting the plaintiff's allegations in support of personal jurisdiction, the burden shifts back to the plaintiff to produce evidence supporting the existence of personal jurisdiction. *United Techs.*, 556 F.3d at 1274. "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Meier*, 288 F.3d at 1269.

### 1. Florida's Long-Arm Jurisdiction

Plaintiff argues that the Court has specific personal jurisdiction over Defendant due to the nature and scope of the business it conducted in Florida during the relevant period. Doc. 21 at 4-9 (citing Fla. Stat. § 48.193(1)(a)(1)). Defendant disagrees, arguing that Ms. Millhouse's declaration establishes that Defendant's business in Florida does not provide the Court with specific personal jurisdiction over Defendant pursuant to section 48.193(1)(a)(1). Doc. 18 at 7-9.

The reach of Florida's long-arm statute "is a question of Florida law," and, thus, the Court is required to apply the statute "as would the Florida Supreme Court." *United Techs.*, 556 F.3d at 1274. "Absent some indication that the Florida Supreme Court would hold otherwise, [federal courts] are bound to adhere to decisions of [Florida's] intermediate courts." *Id.* "Florida's long-arm statute is to be strictly construed." *Sculptchair*, 94 F.3d at 627.

Plaintiff argues that the Court has specific personal jurisdiction over Defendant pursuant to section 48.193(1)(a)(1), which states:

> (1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal

> representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
> 1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

*Id*. "In order to establish that a defendant is carrying on business for the purposes of the long-arm statute, the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005) (internal quotations omitted). This analysis involves the consideration of several non-dispositive factors, including: 1) the presence and operation of an office in Florida; 2) the possession and maintenance of a license to do business in Florida; 3) the number of Florida clients served; and 4) the percentage of overall revenue gleaned from Florida clients. *Id*. Further, there must be some nexus or connection between the claims asserted against defendant and the business defendant conducts in Florida. *Polskie Linie Oceaniczne v. Seasafe Transport A/S*, 795 F.2d 968, 971 (11th Cir. 1986).

In her Complaint, Plaintiff alleges that Defendant "operates and conducts business in . . . Orange County, Florida[.]" Doc. 1 at ¶ 4. Based on this solitary allegation, Plaintiff alleges that the Court has personal jurisdiction over Defendant. *Id*.

In response to Plaintiff's allegation that the Court has personal jurisdiction over Defendant, Defendant submitted Ms. Millhouse's declaration. Doc. 18-1 at 1-5. In her declaration, Ms. Millhouse states that: 1) Defendant is incorporated in North Carolina (*Id*. at ¶ 3); 2) Defendant's headquarters and principal place of business is in North Carolina (*Id*. at ¶ 4); 3) Defendant does not have any offices or bank accounts in Florida (*see id*. at ¶¶ 4, 29); 4) Ms. Millhouse hired Plaintiff from Ms. Millhouse's office in North Carolina (*Id*. at ¶ 7); 5) Ms. Millhouse determined Plaintiff's pay, status as an exempt employee, and work location from Ms. Millhouse office in

North Carolina (*Id.* at ¶ 8); 6) Plaintiff worked remotely from Plaintiff's residence in Orange County, Florida and worked from Defendant's office in North Carolina on three occasions (*Id.* at ¶¶ 12, 14);³ 7) Plaintiff's work assignments and the documentation necessary to perform her job were maintained at and transmitted to Plaintiff from Defendant's office in North Carolina (*Id.* at ¶ 13); 8) Plaintiff reported to and was supervised by individuals who worked at Defendant's office in North Carolina throughout her employment with Defendant (*Id.* at ¶¶ 10-11, 13); 9) Plaintiff recruited employees for job placements in North Carolina, Arkansas, California, Wisconsin, and Iowa (*Id.* at ¶ 16); and 10) only one employee was placed in Florida during Plaintiff's employment with Defendant (*Id.* at ¶¶ 17, 24). Based on this evidence, Defendant argues that it is not subject to specific personal jurisdiction pursuant to section 48.193(1)(a)(1). Doc. 18 at 6-9.

In response to Defendant's Motion and Ms. Millhouse's declaration, Plaintiff submitted a declaration. Doc. 21-1. In her declaration, Plaintiff states that: 1) she performed her work for Defendant in Florida (Doc. 21-1 at ¶ 7); 2) she placed one employee in Florida and attempted to fill hundreds of other positions in Florida (*Id.* at ¶ 15); 3) two of Defendant's officers (Randy Holloran and Jenny Macinello) reside in Florida and conduct business on Defendant's behalf from Florida (*Id.* at ¶¶ 4-5); 4) Plaintiff always discussed business operations for travel nurses with Mr. Holloran, not Ms. Millhouse (*Id.* at ¶ 13); and 5) Defendant has "lucrative partnerships" with two "Florida-based companies" (*Id.* at ¶¶ 8-10). Based on this evidence, Plaintiff argues that Defendant is subject to specific personal jurisdiction pursuant to section 48.193(1)(a)(1). Doc. 21 at 4-9.

In considering whether the Court has personal jurisdiction over Defendant, the undersigned finds the decisions in *Bloom v. A.H. Pond Co., Inc.*, 519 F. Supp. 1162 (S.D. Fla. 1981) and *Burris*

---

³ It is not clear how long Plaintiff worked at Defendant's office during each occasion. *See* Doc. 18-1 at ¶ 14.

*v. Bangert Comput. Sys., Inc.*, Case No. 2:09-cv-201-FtM-29DNF, 2009 WL 3256477 (M.D. Fla. Oct. 7, 2009) to be instructive.

In *Bloom*, the plaintiff, a Florida resident, filed suit against his former employer, a New York corporation with its principal place of business in New York, alleging, in relevant part, that he was discriminated against based on his age in violation of the Age Discrimination Employment Act and the Florida Human Rights Act of 1977. *Bloom*, 519 F. Supp. at 1164.[4] The defendant moved to dismiss the case for lack of personal jurisdiction. *Id*. The court, however, denied the motion. In doing so, the court noted that Plaintiff worked for defendant from an office in Florida and was responsible for sales in Florida and other locations. *Id*. at 1169. In light of these uncontroverted facts, the court noted that the plaintiff was defendant's agent in Florida, transacted business in Florida on defendant's behalf, and the injury giving rise to the case arose from or was incident to plaintiff's employment relationship with defendant. *Id*. at 1170. For these reasons, the court found that it had specific personal jurisdiction over defendant pursuant to section 48.193(1)(a)(1). *Id*.

In *Burris*, the plaintiff, a Florida resident, filed an FLSA action against Defendant, an Iowa corporation with its principal place of business in Iowa. *Burris*, 2009 WL 3256477, at *1-2. The defendant moved to dismiss the case for lack of personal jurisdiction. *Id*. In support of its motion, the defendant submitted an affidavit, in which its president stated that: 1) defendant is an Iowa corporation with its principal place of business in Iowa; 2) defendant has no offices in Florida; 3) defendant is not a foreign corporation doing business in Florida; 4) defendant is not licensed to do

---

[4] The plaintiff in *Bloom* also asserted claims against several individuals, who also moved to dismiss the case for lack of personal jurisdiction. *Bloom*, 519 F. Supp. at 1164. The *Bloom* court's decision with respect to the individual defendants is not relevant to the case at bar. Thus, there is no need to discuss that aspect of the *Bloom* court's decision.

business in Florida; 5) defendant does not conduct business in Florida; and 6) all of plaintiff's work was performed for clients in Kansas, Missouri, Iowa, Nebraska, and Illinois. *Id*. at *2. In response, plaintiff submitted an affidavit, in which she stated that: 1) she performed a vast majority of her work for defendant from her residence in Florida; 2) she occasionally travelled to Kansas and Missouri to perform her work; 3) plaintiff's earnings were deposited into a Florida bank account; and 4) defendant contested plaintiff's claim for unemployment benefits in Florida. *Id*. Considering this evidence, the court noted that "[d]efendant hired [plaintiff] as an employee, allowed [plaintiff] to work from Florida by computer with occasional travel, paid [plaintiff] in Florida, and received the economic benefit of her employment for clients in at least Missouri and Kansas." *Id*. at *4. In addition, the court noted that defendant availed itself of Florida's protections when it disputed the plaintiff's unemployment claim. *Id*. For these reasons, the court found that it had specific personal jurisdiction over defendant pursuant to section 48.193(1)(a)(1) and that exercising personal jurisdiction over Defendant would not offend the Due Process Clause of the Fourteenth Amendment. *Id*.

The evidence before the Court establishes that Defendant, like the defendants in *Bloom* and *Burris*, is a foreign corporation with its principal place of business outside of Florida, and, like the defendant in *Burris*, has no offices in Florida. This evidence and the other uncontroverted evidence presented by Defendant, however, does not undermine Plaintiff's claim that the Court can exercise specific personal jurisdiction over Defendant pursuant to section 48.193(1)(a)(1). Specifically, the uncontroverted evidence shows that: 1) Plaintiff was hired to work for Defendant as a recruit manager (Doc. 18-1 at ¶ 6); 2) Defendant allowed Plaintiff to work remotely from her residence in Florida during the relevant period (*Id*. at ¶ 12); 3) Plaintiff performed a vast majority of her work (which presumably included overtime work) in Florida (*see* Docs. 18-1 at ¶¶ 12, 14; 21-1 at

¶ 7); 4) Plaintiff's work assignments and the documentation necessary to perform her job were maintained at and transmitted to Plaintiff from Defendant's office in North Carolina (Doc. 18-1 at ¶ 13); 5) Plaintiff reported to and was supervised by individuals who worked in North Carolina and Florida (Docs. 18-1 at ¶¶ 10-11, 13; Doc. 21-1 at ¶ 13); and 6) Plaintiff placed one employee in Florida and attempted to fill hundreds of other positions in Florida (Doc. 21-1 at ¶ 15). This evidence largely parallels the evidence before the *Bloom* and *Burris* courts, which evidence led those courts to conclude that they could exercise specific personal jurisdiction over the defendant pursuant to section 48.193(1)(a)(1). The undersigned finds the *Bloom* and *Burris* decisions persuasive and, like those courts, finds that the uncontroverted evidence establishes that Defendant's employment and control over Plaintiff in Florida and the business Plaintiff performed on Defendant's behalf in Florida establishes that Defendant conducted business in Florida as required by section 48.193(1)(a)(1) and that the business related to Plaintiff's FLSA claim. *See Burris*, 2009 WL 3256477, at *4 (reaching similar conclusion). Therefore, the undersigned finds that the Court can exercise specific personal jurisdiction over Defendant pursuant to section 48.193(1)(a)(1).[5]

---

[5] In light on this finding, it unnecessary to address whether the Court also has general personal jurisdiction over Defendant. That said, in the event Court considers that issue, the undersigned notes that Plaintiff has not established that the Court has general personal jurisdiction over Defendant. The exercise of general personal jurisdiction over a foreign defendant comports with due process when a defendant's contacts with the forum state are "so continuous and systematic as to render [the defendant] essentially at home in the forum state." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015) (internal quotations omitted). Plaintiff, as discussed above, has presented uncontroverted evidence that she worked in Florida, she placed one candidate in Florida, she attempted to place many more candidates in Florida, two of Defendant's officers reside in Florida, and Defendant has "lucrative partnerships" with two "Florida-based companies." Doc. 21-1. While this evidence shows that Defendant has several connections with Florida, it does not establish that Defendant's connections with Florida are so continuous and systematic as to render it at home in Florida. Thus, if the Court considers whether it can exercise general personal jurisdiction over Defendant, the undersigned recommends that the Court find it cannot.

## 2. Due Process

Plaintiff argues that exercising personal jurisdiction over Defendant would not offend the Due Process Clause of the Fourteenth Amendment. Doc. 21 at 11-14. Defendant, as previously mentioned, does not address whether exercising jurisdiction over it would offend the Due Process Clause of the Fourteenth Amendment. *See* Doc. 18 at 6-9. Thus, it appears Defendant has conceded the issue. Nevertheless, the undersigned will consider whether exercising personal jurisdiction over Defendant would offend the Due Process Clause of the Fourteenth Amendment.

The due process analysis involves a two-part inquiry: 1) whether the defendant engaged in minimum contacts with the forum state; and 2) whether the exercise of personal jurisdiction over the defendant would offend traditional notions of fair play and substantial justice. *Madara v. Hall*, 916 F.2d 1510, 1515-16 (11th Cir. 1990).

To establish minimum contacts with a forum state, a defendant must have performed "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The requirement that the defendant purposefully avail itself of conducting activities in the forum "ensures that [the] defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts" with the forum state. *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotations and citations omitted).

Once minimum contacts with the forum state are established, the issue becomes whether the maintenance of the case in the current forum would offend traditional notions of fair play and substantial justice. In determining whether the assertion of personal jurisdiction comports with notions of fair play and substantial justice, the Court considers: 1) the burden on the defendant; 2) the forum state's interest in adjudicating the dispute; 3) the plaintiff's interest in obtaining

convenient and effective relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and 5) the shared interest of the several states in furthering fundamental substantive social policies. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1251 (11th Cir. 2000) (citing *Burger King*, 471 U.S. at 466).

Defendant has several contacts with Florida. First, Defendant permitted Plaintiff to work from her residence in Florida and controlled and supervised the work Plaintiff performed in Florida. Docs. 18-1 at ¶¶ 10-13; 21-1 at ¶¶ 7, 13. Second, Plaintiff placed one employee in Florida and attempted to fill hundreds of other positions in Florida as part of her work for Defendant. Docs. 18-1 at ¶¶ 17, 24; 21-1 at ¶ 15. Third, Defendant had at least three employees (Plaintiff, Mr. Holloran, and Ms. Macinello) who resided in Florida and conducted business on Defendant's behalf from Florida during the relevant period. Doc. 21-1 at ¶¶ 4-5, 7. These are not random, fortuitous, or attenuated contacts with Florida but, instead, are sufficient to establish that Defendant purposefully availed itself of the privilege of conducting business in Florida.

Finally, exercising jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice. Plaintiff, as discussed below, has a strong interest in litigating the case in Florida since that is where she resides and, presumably, performed most of the overtime work at issue. Defendant, on the other hand, has not shown that it will be unduly prejudiced by litigating in Florida. As for the remaining factors, the undersigned finds that Florida has a strong interest in this case because it involves the payment of overtime wages to a resident who performed much of her work in Florida. Further, there is nothing in the record to suggest that proceeding in Florida would be less efficient than if the case was to proceed in North Carolina. Thus, in light of the foregoing, and absent any argument on the matter from Defendant, the undersigned finds that

exercising jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice.

In summary, the undersigned finds that Plaintiff has established a *prima facia* case that the Court has personal jurisdiction over Defendant.

### B. Venue

Defendant argues that the case should be transferred to the Western District of North Carolina pursuant to 28 U.S.C. § 1404(a) because it is a more convenient forum for litigating the case. Doc. 18 at 10-17.[6] Plaintiff essentially argues that transferring this case to North Carolina would be inappropriate. Doc. 21 at 14-15.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought[.]" 28 U.S.C. § 1404(a). A number of factors have been identified for consideration in determining whether to transfer a case pursuant to § 1404(a), including: 1) the convenience of the witnesses; 2) the location of relevant documents and the relative ease of access to sources of proof; 3) the convenience of the parties; 4) the locus of operative facts; 5) the availability of process to compel the attendance of unwilling witnesses; 6) the relative means of the parties; 7) a forum's familiarity with the governing law; 8) the weight accorded a plaintiff's choice of forum; and 9) trial efficiency and the interests of justice, based on the totality of the circumstances. *Manuel v. Convergys Corp.*, 430

---

[6] The undersigned notes that Defendant does not argue that this Court is an inappropriate venue. *See* Doc. 18 at 10-17. Instead, Defendant simply argues that it would be more convenient to litigate this case in North Carolina. *Id.* Further, the undersigned notes that Plaintiff does not dispute that this case could have been filed in North Carolina. *See* Doc. 21 at 14-15. Thus, the Motion does not involve the propriety of venue under 28 U.S.C. § 1391, or whether a transfer is warranted under 28 U.S.C. § 1406. Therefore, the undersigned's analysis focuses solely on whether this case should be transferred to North Carolina pursuant to § 1404(a).

F.3d 1132, 1135 n.1 (11th Cir. 2005). "[T]he burden is on the movant to establish that the suggested forum is more convenient." *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989).

1. **The Convenience of the Parties**

Plaintiff resides in Florida, while Defendant is incorporated and headquartered in North Carolina. A transfer of venue would merely shift the inconvenience from Defendant, a corporation that likely could adjust to many inconveniences (e.g., having employees absent for deposition or trial) caused by litigating this case in Florida, to Plaintiff, who would likely be more inconvenienced by traveling to North Carolina to litigate this case. Thus, the undersigned finds that this factor weighs against transfer to North Carolina.

2. **The Relative Means of the Parties**

Plaintiff is an individual residing in Florida, while Defendant is corporation that is incorporated and headquartered in North Carolina. The parties provide no evidence concerning their relative means. *See* Docs. 18 at 10-17; 21 at 14-15. Despite the lack of such evidence, there is little doubt that Defendant, a corporation that employs 26 individuals (Doc. 18-1 at ¶ 18), has greater means than an individual like Plaintiff. Thus, the undersigned finds that this factor weighs against transfer to North Carolina.

3. **The Convenience of the Witnesses**

Defendant states that several witnesses (two of whom Defendant identifies by name, Ms. Millhouse and Sarah Fuller) who have knowledge about the issues in this case reside in North Carolina. Doc. 18 at 12-13 (citing Doc. 18-1 at ¶¶ 5, 8, 10-11, 27-28). Thus, Defendant argues that this factor weighs in favor of transferring the case to North Carolina. *Id.* at 13.

Plaintiff claims that only one "necessary" witness (Ms. Millhouse) resides in North Carolina while two witnesses, Mr. Holloran and Ms. Macinello, who have knowledge about the

issues in this case reside in Florida. Doc. 21 at 15. Thus, Plaintiff argues that this factor weighs against transferring the case to North Carolina. *Id.*

The convenience of witnesses is an important factor in determining whether a case should be transferred pursuant to § 1404(a). *Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*, 761 F. Supp. 2d 1322, 1327 (M.D. Fla. 2010). The import of this factor, however, is "diminished when the witnesses, although in another district, are employees of a party and their presence at trial can be obtained by that party." *Id.* (citing *Mason v. Smithkline Beecham Clinical Labs.*, 146 F. Supp. 2d 1355, 136-62 (S.D. Fla. 2001)).

The parties each name two witnesses that they contend have knowledge about the issues in this case. The witnesses that Defendant names are located in North Carolina, while the witnesses Plaintiff names are located in Florida. Thus, there is an even distribution of named witnesses between North Carolina and Florida, which would suggest that this factor favors neither party.

Defendant suggests that there are additional witnesses in North Carolina that have knowledge about the issues in this case. *See* Doc. 18 at 12-13. Defendant, however, does not identify any of the other witnesses by name and does not provide any specific information about the unique knowledge those witnesses possess about the issues in this case. *See id.* These vague assertions about additional, unnamed witnesses do not tip this factor in Defendant's favor. *See Oller v. Ford Motor Co.*, 1994 WL 143017, at *3 (M.D. Fla. 1994) (a party should specify the key witnesses to be called and their expected testimony when considering the convenience of the witnesses).

There is no dispute that the only witnesses Defendant points to are its employees. Doc. 18 at 12-13. This fact diminishes the inconvenience those witnesses would experience, because their presence at trial can be obtained by their employer, Defendant. *Trinity Christian*, 761 F. Supp. 2d

at 1327. In light of this and the presence of Plaintiff and two witnesses in Florida, the undersigned finds that this factor weighs slightly against transfer to North Carolina.

### 4. The Availability of Process to Compel the Attendance of Unwilling Witnesses

Defendant argues that since North Carolina is more than 100 miles away from this District the parties' ability to conduct discovery would be severely limited. Doc. 18 at 14-15. Thus, Defendant argues that this factor weighs in favor of transferring the case to North Carolina. *Id*. at 15.[7]

Defendant speculates that there may be issues with compelling the attendance of witnesses in North Carolina, but it has not produced any evidence that the witnesses in North Carolina would be unwilling to appear at a deposition or at trial. Thus, the undersigned finds Defendant's speculation unpersuasive. *See Mason*, 146 F. Supp. 2d at 1362 (finding that a failure to "show that the witnesses would be unwilling to testify and that compulsory process would be necessary" weighs against transfer). Further, as discussed above, the only witnesses that Defendant points to are its employees, whom could be made available by Defendant. Thus, the undersigned finds that this factor is inconclusive.

### 5. The Locus of Operative Facts

Defendant states that the actions taken with respect to Plaintiff's status as an exempt employee, her work assignments, and pay were made in North Carolina. Doc. 18 at 14 (citing Doc. 18-1 at ¶¶ 8, 13, 19-20). Thus, Defendant argues that this factor weighs in favor of transferring the case to North Carolina. *Id*.[8]

---

[7] Plaintiff does not address this factor. *See* Doc. 21 at 14-15.

[8] Plaintiff does not address this factor. *See* Doc. 21 at 14-15.

This case appears to involve issues concerning both coverage (i.e., whether Plaintiff is covered by the FLSA) and liability (i.e., whether Plaintiff worked but was not paid overtime) under the FLSA. *See* Doc. 1. There is no dispute that Defendant's actions – particularly its actions concerning Plaintiff's exempt status – in North Carolina will be relevant to this case. This case, though, will more than likely also involve a fair amount of evidence about Plaintiff's activities in Florida since that is where she performed a vast majority of her work for Defendant. Thus, the undersigned finds that this factor is inconclusive.

### 6. The Location of Relevant Documents and Ease of Access to Sources of Proof

Defendant states that all the records pertaining to Plaintiff's employment, job assignments, and compensation are located in North Carolina. Doc. 18 at 13-14 (citing Doc. 18-1 at ¶¶ 13, 20-21, 23, 27). Thus, Defendant argues that this factor weighs in favor of transferring the case to North Carolina. *Id.*[9]

There is no dispute that a number (perhaps a majority) of the records that would be sought in this case are located at Defendant's headquarters in North Carolina. Defendant, however, has not shown that compiling and sending the requested documents to Plaintiff's counsel in Florida will be unduly burdensome. Further, to the extent Defendant would be burdened by having to produce documents in Florida, that burden would more than likely be significantly mitigated given the broad use of electronic records, advancements in electronic document imaging and retrieval, and the ability to transfer a large number of documents electronically. *See Weintraub v. Advanced Corr. Healthcare, Inc.*, 161 F. Supp. 3d 1272, 1283 (N.D. Ga. 2015) ("Since the predominance of electronic discovery in the modern era, most courts have recognized that the physical location of

---

[9] Plaintiff does not address this factor and, thus, has not shown that any relevant documents are present in Florida. *See* Doc. 21 at 14-15.

relevant documents is no longer a significant factor in the transfer inquiry."); *Trinity Christian*, 761 F. Supp. 2d at 1327-28 (explaining that the significance of the where documents are located has been reduced due to advancements in electronic document imaging and retrieval). Thus, the undersigned finds that this factor is inconclusive

### 7. A Forum's Familiarity with the Governing Law

This case involves an alleged violation of the FLSA. There is no question that this Court and the district court in North Carolina are equally knowledgeable about the governing law. Thus, the undersigned finds that this factor is neutral.

### 8. Trial Efficiency and the Interests of Justice

Defendant argues that transferring the case would: 1) promote judicial efficiency by allowing non-party witnesses to participate in discovery and attend trial; 2) allow the case to be resolved in the district that has the most interest in the controversy; and 3) because there are fewer cases pending in the Western District of North Carolina and the median length of time for a case to be tried in the Western District of North Carolina is shorter than in this District. Doc. 18 at 16-17. Thus, Defendant argues that this factor weighs in favor of transferring the case to North Carolina. *Id.*[10]

The undersigned finds each of Defendant's reasons unpersuasive. First, as discussed above, the undersigned found that Defendant has failed to demonstrate that the witnesses residing in North Carolina would be unwilling to participate in the case if it were litigated in Florida. *See supra* pp. 13-15. Second, the local interest in this case is, at the very least, equal between Florida and North Carolina since the actions and decisions that led to this case took place in Florida (e.g.,

---

[10] Plaintiff does not address this factor. *See* Doc. 21 at 14-15.

Plaintiff's overtime work) and North Carolina (e.g., the decision to classify Plaintiff as an exempt employee). Third and finally, while Defendant has demonstrated that there are significantly more cases pending in this District compared to the Western District of North Carolina, Defendant has not provided any evidence concerning the median length of time for a case to be tried in the Western District of North Carolina.[11] Thus, Defendant has not carried its burden of demonstrating that this factor weighs in favor of transfer. Further, even assuming the median length of time for a case to be tried in the Western District of North Carolina is shorter than in this District, the undersigned notes that this appears to be a relatively straightforward FLSA case, which often settle long before they are tried. Thus, considering the nature of this case, the undersigned finds that any disparity between the time it takes each court to try cases diminishes the significance of that disparity. Therefore, the undersigned finds that this factor is inconclusive.

### 9. The Weight Accorded a Plaintiff's Choice of Forum

Defendant argues that little weight should be accorded to the Plaintiff's choice to litigate in this Court because the operative facts occurred in North Carolina, and the relevant documents and witnesses are located in North Carolina. Doc. 18 at 15-16 (citing Doc. 18-1 at ¶¶ 10-15). Thus, Defendant argues that this factor weighs in favor of transferring the case to North Carolina. *Id.*[12]

---

[11] Defendant claims that there are no statics concerning the median length of time for a case to be tried in the Western District of North Carolina. Doc. 18 at 17 n.6. The lack of statics, however, does not preclude Defendant from determining the median length of time for a case to be tried in the Western District of North Carolina. Indeed, Defendant could more than likely have reviewed the dockets in the cases that were tried in the Western District of North Carolina and calculated the median length of time for a case to be tried in the Western District of North Carolina. Thus, the lack of statics regarding the median length of time for a case to be tried in the Western District of North Carolina does not excuse Defendant from satisfying its burden of demonstrating why this case should be transferred pursuant to § 1404(a).

[12] Plaintiff does not address this factor. *See* Doc. 21 at 14-15.

"[A] plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). That choice "should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (quoting *Howell v. Tanner*, 650 F.2d 610, 616 (5th Cir. 1981)).

Defendant relies on the arguments it made in relation to several of the factors discussed above, including the location of documents and witnesses. The undersigned, however, found that those factors were either neutral, inconclusive, or weighed against transfer to North Carolina. Thus, Defendant has not pointed to anything that would disturb the deference accorded to Plaintiff's choice to litigate the case in her home forum.[13] Therefore, the undersigned finds that this factor weights against transferring the case to North Carolina.

In summary, several critical factors weigh against transferring this case to North Carolina, while the other factors are either inconclusive or neutral. Therefore, in light of the foregoing, the undersigned finds that Defendant has not demonstrated that this case should be transferred to the Western District of North Carolina.

---

[13] Defendant briefly discusses Plaintiff's employment agreement (Agreement), noting that Plaintiff "consented to the jurisdiction for any litigation regarding the Agreement to be the state or federal courts located in Mecklenburg County, North Carolina." Doc. 18 at 4 n.2; *see* Doc. 18-1 at 6-13 (a copy of the Agreement). Defendant does not expressly cite to the Agreement in support of its arguments to dismiss or transfer the case. *See* Doc. 18 at 6-17. Thus, it is unclear why Defendant discussed the Agreement. To the extent Defendant's discussion of the Agreement suggests that Plaintiff's choice of forum should be accorded little weight, the undersigned is not persuaded. The Agreement states that the parties consent to the jurisdiction of the courts in Mecklenburg County, North Carolina in the event there is any litigation "regarding [the] Agreement." Doc. 18-1 at 11-12. This case does not involve any claims regarding the Agreement but, instead, involves a claim that Defendant violated the FLSA. Thus, the undersigned finds that the venue provision of the Agreement does not weigh in favor of transferring this case to North Carolina.

### III. Conclusion

Accordingly, it is **RECOMMENDED** that the Motion (Doc. 18) be **DENIED**.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on September 28, 2018.

DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy