# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**CAROLYN DAVIS,**

      **Plaintiff,**

                                                  **CASE NO.: 6:18-CV-695-ORL**

**v.**

**CEO RECRUITING, INC. d/b/a CEO, INC.**
**a Foreign For Profit Corporation,**

      **Defendant.**

_____/

## DEFENDANT, CEO RECRUITING, INC.'S MOTION TO DISMISS FOR FRAUD UPON THE COURT OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Defendant, CEO RECRUITING, INC. d/b/a CEO, INC. (referred to herein as "CEO"), by and through its undersigned counsel and pursuant to Federal Rule of Civil Procedure 56(a) and in accordance with Middle District of Florida Local Rule 3.01, respectfully moves this Court for an Order dismissing Plaintiff's Complaint or, in the alternative, granting Summary Judgment in favor of Defendant, and in support thereof states as follows:

## PRELIMINARY STATEMENT

Defendant is a full-service recruitment and staffing firm based in North Carolina that specializes in direct hire placement for companies nationwide. Defendant employed Plaintiff as a Senior Recruiting Manager from April 20, 2015 to September 5, 2017. Plaintiff contends Defendant misclassified her as exempt under the Fair Labor Standards Act (FLSA) and failed to pay her overtime.

The Court should dismiss Plaintiff's Complaint because she has engaged in fraud on the Court by repeatedly providing false testimony under oath that she worked 15 hours of overtime each week, totaling ***1,875 overtime hours*** during her employment, when in fact the maximum amount of overtime hours she could have worked during her employment was only ***14 hours and 48 minutes***.  Plaintiff has offered sworn testimony in her answers to the Court's Interrogatories, responses to Defendant's interrogatories, and her deposition testimony in this case that she worked approximately 15 hours of overtime each week (i.e., more than 40 hours each week), for a total of 1,875 hours of overtime.  However, the evidence in this case clearly shows that the <u>maximum</u> amount of overtime Plaintiff could have possibly worked during the entire period of her employment was only 14 hours and 48 minutes (i.e., only <u>0.008%</u> of the total amount of overtime hours she claims).  As such, Plaintiff's Complaint should be dismissed for fraud on the Court and sanctions should be imposed.

Alternatively, the Court should grant summary judgment in favor of Defendant as to Plaintiff's Complaint in its entirety because the record evidence establishes that Plaintiff was properly classified an exempt employee under the administrative exemption of the FLSA and, therefore, was not entitled to overtime compensation.  However, should the Court find that Plaintiff was not an exempt employee, the Court should grant partial summary judgment in favor of Defendant finding Plaintiff is not entitled to liquidated damages as Defendant's actions in classifying Plaintiff as an exempt employee were in good faith reliance and conformity with written administrative regulations and interpretations of the Department of Labor (DOL), and therefore liquidated damages are not recoverable because Defendant acted in good faith and

had reasonable grounds for believing that its classification of Plaintiff's position was not a violation of the FLSA.

## **STATEMENT OF UNDISPUTED MATERIAL FACTS**

Defendant is a professional recruiting company that provides employee-locating services to its clients. (Dkt. 1, ¶ 13). In 2015, Defendant hired Plaintiff as a Senior Recruiting Manager. (Pl. Dep. 29:15-20).[1] Plaintiff was required to locate qualified nurse recruits to fill open positions. (Dkt. 1, ¶16). Plaintiff earned an annual salary of $55,000 per year ($1,057.69 per week). (Pl. Dep. 46:16-46:21). Plaintiff was aware that she was classified as a salaried employee. (Pl. Dep. 44:03-44:12).

On May 5, 2018, Plaintiff filed this action against Defendant alleging she routinely worked more than forty (40) hours per week and was entitled to overtime compensation because she was misclassified under the FLSA. (Dkt. 1, ¶ 28, 33-34). On November 27, 2018, Plaintiff filed sworn Answers to the Court's Interrogatories stating that from May 5, 2015 to September 5, 2017 she worked approximately fifteen (15) hours of overtime per week. (Dkt. 29). Plaintiff signed her sworn Answers to Court's Interrogatories and verified under oath that her answers were true and correct. (Dkt. 29). In response to number 12 of Defendant's Interrogatories to Plaintiff swore under oath that her damages were based on working fifteen (15) hours of overtime per week. *See* Exhibit "A" (Plaintiff's responses to Defendant's Ints.). In her deposition testimony, Plaintiff testified that she worked from 7:00 a.m. to 7:30 a.m. and 6:00

---

[1]       For the purposes of this Motion, excerpts from Plaintiff's deposition transcript shall be referred to as "Pl. Dep. __ [*page and line numbers*]." A copy of Plaintiff's deposition transcript and exhibits is being filed concurrently with this Motion.

p.m. to 9:00 p.m. Monday through Friday and that it was not uncommon to work on Saturdays and Sundays.   (Pl. Dep. 101:20-102:7, 103:18-104:9).

## I.   Defendant's API System

Defendant utilizes a computerized applicant tracking system referred to as "API" which Plaintiff would use to track all of the work she performed.  (Pl. Dep. 48:14-23).  All leads were put into API and Plaintiff was to contact the leads assigned to her.  (Pl. Dep. 57:22-58:7). Plaintiff would track all of her work and activity in API, including:  each time she made contact with an applicant or employee, the method of communication, when she emailed an applicant or employee, the reason she contacted an applicant or employee, whether she left a message for an applicant, if she was following up with an applicant on competition of an application, and if she was creating a profile for a referral.  (Pl. Dep. 49:12-13, 57:22-24, 60:14-64:20).  Plaintiff would input detailed information and notes about each contact, and all of her work and activities were time-stamped in API.  (Pl. Dep. 49:12-13, 57:22-24, 60:14-64:20).  She would log her work contemporaneous to when she was doing the task.  (Pl. Dep. 102:23-103:10).  All activity was documented in API.  (Pl. Dep. 62:11-15).

According to Plaintiff, all of the time she spent working is accurately reflected in API, including any time she worked on the weekends, and the time stamps in API and on her emails show all time that she worked.  (Pl. Dep. 49:12-25; 57:22-24; 60:14-64:20; 71:25-72:3; 102:16-103:17; 104:23-105:1, Exhibit 3 to Pl. Dep.).

## II.   Plaintiff's Job Duties

According to Plaintiff, she was primarily responsible for recruiting, interviewing and recommending placement of employees.  (Pl. Dep. 133:19-23).  Plaintiff was responsible for

evaluating each nurse's skill set and licenses in determining whether to submit them for a

position. (Pl. Dep. 134:9-14).

Plaintiff's job duties with Defendant included the following:

- Generate candidate leads (Pl. Dep. 59:14-60:5).
- Develop and maintain candidate sources (Pl. Dep. 59:14-60:13).
- Screen candidates and match them to open positions (Pl. Dep. 56:15-57:7, 58:12-18, 116:23-25, 122:5-21), by analyzing candidates' strengths, weaknesses, work history and experience. (Pl. Dep. 78:12-15, 79:14-20, 81:10-82:12, 82:23-25, 92:21-24, 93:22-94:10, 101:15-19).
- Select the nurse that she felt was the best fit for a job from a group of candidates. (Pl. Dep. 121:11-17).
- Contact candidates regarding availability and location preferences. (Pl. Dep. 76:16-19).
- Interview candidates. (Pl. Dep. 79:3-5).
- Communicate with candidates regarding any outstanding information and documentation needed to complete application. (Pl. Dep. 90:15-19).
- Clarify job requests with account managers. (Pl. Dep. 18-76:5).
- Obtain professional references from candidates and contact those references to verify employment and work performance. (Pl. Dep. 80:8-15).
- Prepare pay packages for nurses (Pl. Dep. 116:8-16) and communicate with candidates regarding pay and benefits. (Pl. Dep. 89:5-8).
- Increase or decrease hourly rates of pay and housing allowances, both of which would impact the gross profit to the company. (Pl. Dep. 109:11-25).
- Prepare and execute contract between the Company and the nurses. (Pl. Dep. 87:23-88:2, 97:1-24, Exhibit 9).
- Supervise nurses (who were employees of Defendant) by overseeing that they reported to their assignment, communicating with nurses weekly or bi-weekly to ensure they were at work and did not have any issues, and being the point of contact for non-clinical issues such as payroll or extending contracts. (Pl. Dep. 30:12-33:8, 100:23-101:14).
- Counsel nurses on non-clinical issues (which are issues that do not involves patient care), such as tardiness or attendance. (Pl. Dep. 32:3-12, 99:19-23, 100:10-22).

## III.   Defendant's Compliance with the FLSA

Defendant underwent numerous efforts to obtain information from various sources to

ensure that its compensation agreement with Plaintiff was in compliance with the FLSA. *See*

Exhibit "B" (Defendant's Int. Responses, No. 15).   Defendant analyzed and relied on Department of Labor (DOL) Opinion Letters FLSA2005-45 and FLSA2009-31 (renumbered FLSA2018-12) in classifying Plaintiff's position as exempt. *Id.* Defendant learned of DOL Opinion Letter FLSA2005-45 from Bob Style, Esq. and contacted the DOL which confirmed the validity of the opinion letter. *Id.* After attending a seminar which addressed wage and hour issues, which Defendant believes was conducted by Jill Benson, Esq., Defendant researched and found DOL Opinion Letter FLSA2009-31 (renumbered FLSA2018-12). *Id.*

Defendant has been a member of the Employers Association (the "EA"). The EA serves as a knowledgeable and trusted resource to meet the comprehensive human resource, training and benefit needs for organizations in the greater Charlotte, North Carolina area. *Id.* During its membership with the EA, Defendant had access to wage and hour information, seminars and other resources, which Defendant utilized. *Id.* Defendant also attended numerous HR roundtables and seminars with the EA, which included discussion on wage and hour topics. *Id.* Defendant obtained insight and clarification on wage and hour questions it had from the EA, including obtaining guidance and advice from Kenny Colbert, President & CEO, and Laura Hampton, Vice President. *Id.*

Defendant has also been a part of the National Association of Personnel Services (NAPS) which offers two nationally recognized certifications: the Certified Personnel Consultants (CPC) and the Certified Temporary Consultant (CTS). *Id.* The CPC and CTS are the most comprehensive recruiting and staffing industry certifications. *Id.* Deborah Millhouse, President of CEO, Inc., who has been with Defendant since 1996 and currently owns the Company, holds both of these certifications. *Id.* The testing for these certifications covers legal

and operational excellence. Candidates for CPC and CTS certification must demonstrate a broad knowledge of employment laws and the legal implications on the work of direct-hire and temporary staffing professionals. *Id.* Through the process of certification, candidates for certification confirm their fundamental understanding of the laws which govern the employment relationship in the United States. *Id.* Those who possess the CPC and CTS credential must meet continuing education requirements. *Id.* At present, CPCs and CTSs are required to earn 17 continuing education hours/units (CEU) each year following certification. *Id.* Ms. Millhouse has taken numerous CEU classes over the past 25 years, several of which have covered wage and hour requirements under the FLSA and changes under the FLSA. *Id.* Furthermore, Defendant has obtained legal updates and wage and hour information from People 2.0, CBIZ Human Capital Services, American Staffing Association, Legal Counsel of National Association of Personnel Services, Staffing Industry Analysts and EmployDrive. *Id.*

Defendant has also sought legal advice and attended many legal and legislative webinars over the years regarding wage and hour topics. *See* Exhibit "B" (Defendant's Interrogatory Responses, No. 14). For example, Defendant sought advice and counsel from Bob Style, Esq. on wage and hour issues and compliance with the Fair Labor Standards Act. *Id.* Defendant also worked with Jill Benson, Esq. at Womble Carlyle Sandridge & Rice LLP (now Womble Bond Dickinson), who specializes in the staffing industry, on its employment agreements and review and update of its Employee Handbook in 2013, including its wage and hour policies. *Id.* Ms. Millhouse attended seminars presented by Jill Benson, Esq. hosted by North Carolina Association of Staffing Professions from 2010 to 2014 which addressed compliance with the FLSA. *Id.* Ms. Millhouse has also attended many legal and legislative webinars over the years

regarding wage and hour topics, including those discussing potential changes to the FLSA in 2015 and 2016.  *Id.*    Defendant has also had its Employee Handbook, including its wage and hour policies, reviewed and updated by Mark Kerfoff, Esq. on more than one occasion, including in November 2015.  *Id.*

During the twenty-two (22) years that Ms. Millhouse has been the President and/or owner of the Company, Defendant has not been sued nor investigated by the DOL. *See* Exhibit "B" (Defendant's Int. Responses, No. 9).  Other than the present lawsuit, Defendant has never been sued for unpaid wages or overtime compensation and it has never received a demand letter for unpaid overtime compensation.  *Id.*

## MEMORANDUM OF LAW

### I.  **Plaintiff's Complaint Should be Dismissed in its Entirety Due to Plaintiff's Fraud Upon the Court.**

A party commits fraud on the court where "a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." *Kosterlitz v. Klu*, Case No. 8:18-cv-569-T-33JSS, 2018 U.S. Dist. LEXIS 103652, at *2 (M. D. Fla. June 21, 2018) (citing *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989)).  "A federal trial court has the authority to sanction a party for fraud." *See also  Bender v. Tropic Star Seafood, Inc.*, 4:07-CV-438-SPM, 2008 U.S. Dist. LEXIS 116835, at *5 (N.D. Fla. Sept. 3, 2008) (*citing Chambers v. NASCO, Inc.*, 501 U.S. 32, 50-51 (1991)).  If fraud on the court is proven, dismissal of the action is an appropriate sanction.  *Id.* (citing *Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1335-36 (11th Cir. 2002)).

"Perjury, regardless of the setting, is a serious offense that results in incalculable harm to the functioning and integrity of the legal system as well as to private individuals." *United States v. Holland*, 22 F.3d 1040, 1047 (11th Cir. 1994).  When perjury is brought to the attention of a court, it is dealt with harshly, and dismissal of claims is within the court's discretion.  *See, e.g., Vargas v. Peltz*, 901 F. Supp. 1572, 1579 (S.D. Fla. 1995).  "A federal court has the authority to, and must not avoid the responsibility for, monitoring the conduct of all litigants and attorneys who come before it." *Derzack v. County of Allegheny, Pa*., 173 F.R.D. 400, 411 (W.D. Pa. 1996) *aff'd*, 118 F.3d 1575 (3d Cir. 1997).  Dismissal of Plaintiff's lawsuit is warranted in this case in light of Plaintiff's egregious conduct in providing false information under oath.

### A. Plaintiff Repeatedly Lied Under Oath by Claiming She Worked 1,875 hours of Overtime When in Fact the Maximum Amount of Overtime She Could Have Worked Was Less than 15 Hours.

Plaintiff blatantly made false statements under oath in this case - including to this Court in her responses to the Court's interrogatories - regarding the number of hours she claimed to have worked each week, which is the <u>central issue</u> in this unpaid overtime case.  On November 27, 2018, Plaintiff filed Sworn Answers to Court's Interrogatories stating that from May 5, 2015 to September 5, 2017 she worked approximately 15 hours of overtime per week.  (Dkt. 29).  Plaintiff signed her Sworn Answers to Court's Interrogatories and verified under oath that her answers were true and correct.  *Id*.  Plaintiff also testified under oath in her deposition that she worked from 7:00 a.m. to 7:30 a.m. and 6:00 p.m. to 9:00 p.m. Monday through Friday, and that it was not uncommon to work on Saturdays and Sundays.  (Pl. Dep. 101:20-102:7, 103:18-

104:9).  Plaintiff repeatedly offered sworn testimony in this case that was false, claiming she worked at least 1,875 overtime hours during her employment.

Plaintiff testified during her deposition that she would track all of her work and activity in API, including:  each time she made contact with an applicant or employee, the method of communication, the reason she contacted an applicant or employee, whether she left a message for an applicant, if she was following up with an applicant on competition of an application, or if she was creating a profile for a referral.  (Pl. Dep. 49:12-13, 57:22-24, 60:14-64:20).  She would input detailed information and notes about each contact, and all of her work and activities were time-stamped in the system.  (Pl. Dep. 49:12-13, 57:22-24, 60:14-64:20).  She would contemporaneously log her activity while she was doing the task.  (Pl. Dep. 102:23-103:10).  According to Plaintiff, **all** of the time she spent working was accurately reflected in API, including any time she worked nights or weekends, and the time stamps in API show all time that she worked. (Pl. Dep. 49:12-13; 57:22-24; 60:14-64:20; 71:25-72:3; 101:20-103:17; 104:23-105:1; 113:7-11; 123:22-25, Exhibit 3 to Pl. Dep.).

Defendant calculated Plaintiff's hours worked by utilizing not only all of the timestamps in Plaintiff's API records, but also taking into account the time stamp on every email Plaintiff sent during her employment (approximately 10,811 emails).  *See* Exhibit "C" (Affidavit of Deborah Millhouse).  Defendant calculated the total hours Plaintiff worked by calculating the time between the first time stamp and the last time stamp for each day (based on the times in Plaintiff's API and her emails) and subtracting out any break periods exceeding 30 minutes.  Of the 125 weeks Defendant employed Plaintiff, there were only 5 weeks during which Plaintiff could have possible worked overtime hours.  In total, the maximum number of overtime hours

Plaintiff could have possible worked was only 14 hours and 48 minutes, essentially only 0.008%
of the 1,875 overtime hours she alleges - under oath on several occasions - to have worked
during her employment. *Id.* More troubling is the fact that Plaintiff rarely worked close to 40
hours each week.  In fact, Plaintiff worked the following:

- less than 10 hours during 38 weeks of the 125 weeks of her employment
- between 10 and 20 during 57 weeks of the 125 weeks of her employment
- between 21 and 30 hours during 17 weeks of the 125 weeks of her employment
- between 31 and 40 hours during 8  weeks of the 125 weeks of her employment

Defendant and its counsel have repeatedly refuted Plaintiff's unsupported allegation that
she worked 15 hours of overtime per week.  *See* Defendant's Answer and Affirmative Defenses
(Dkt. 28); Exhibit "B," (Defendant's Int. Responses No. 15); and Exhibit "D" (Defendant's
Responses to Plaintiff's Requests for Admissions).  In fact, Defendant's counsel produced to
Plaintiff and her counsel Plaintiff's API report and emails (beginning in November 2018 in
accordance with the Court's Scheduling Order) and excel spreadsheet reports which listed by
date <u>every time stamp</u> in Plaintiff's API report and Plaintiff's e-mails (which she testified
represented all hours she worked).[2]  Furthermore, Defendant shared with Plaintiff and her
counsel the results of the calculations it prepared showing by week the number of hours Plaintiff
worked which Defendant easily prepared by calculating the time between the first time stamp
and the last time stamp for each day listed and subtracting out any break periods exceeding 30
minutes.  Plaintiff and her counsel could have easily calculated Plaintiff's hours worked using
the excel spreadsheets Defendant produced if they questioned Defendant's calculations.

---

[2]        Defendant produced the excel spreadsheet to Plaintiff and her counsel in electronic form so that Plaintiff
and her counsel could conduct their own analysis of hours worked.

Despite having all of the documents and information showing the number of hours Plaintiff worked, as early as November 2018, and that she only worked 0.008% of the 1,875 overtime hours she claimed, Plaintiff made *no effort* to amend her Sworn Answers to Court's Interrogatories or her other sworn testimony to reflect that she only worked overtime in at most 5 workweeks.   Rather, Plaintiff has continued to litigate this matter demanding overtime compensation for hours that she never worked.   Plaintiff's false and dishonest testimony on numerous occasions and continued egregious conduct is *inexcusable* and should not be tolerated by this Court.   As such, Defendant respectfully requests this Court dismiss Plaintiff's Complaint on this basis.

## II.   Summary Judgment Should be Granted in Favor of Defendant as Plaintiff's Complaint in its Entirety.

Even if this Court does not dismiss Plaintiff's Complaint for fraud on the Court, Defendant is entitled to summary judgment because the record evidence establishes that Plaintiff was an exempt employee under the administrative exemption of the FLSA and, therefore, was not entitled to overtime compensation.   Moreover, even if this Court finds that Plaintiff was not an exempt employee, the Court should grant partial summary judgment finding that Plaintiff cannot recover liquidated damages as Defendant's actions in classifying Plaintiff as an exempt employee were in good faith reliance and conformity with written administrative regulations and interpretations of the DOL. Furthermore, Plaintiff should only be permitted to recover overtime for a maximum of 14 hours and 48 minutes of overtime Plaintiff worked during her employment.

### A.   *Summary Judgment Standard*

Federal Rule of Civil Procedure 56(c) authorizes summary judgment when all "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Only those factual disputes that might affect the outcome of litigation will render summary judgment improper. *Anderson v. Liberty Lobby*, Inc., 477 U.S. 144, 159 (U.S. 1986).

When assessing whether summary judgment should be granted, the court should not weigh the evidence to determine the validity of the matter, but rather ask whether a jury of reasonable minds could return a verdict for the moving party. *Id.*

**B. *Summary Judgment Should be Granted in Favor of Defendant Because Plaintiff Was Properly Classified as Exempt from Overtime under the FLSA***

The Court should grant summary judgment in favor of Defendant as to Plaintiff's claim for overtime compensation because the record evidence establishes that Plaintiff was an exempt employee under the administrative exemption of the FLSA. An employee working in an administrative capacity is exempt from the FLSA's overtime provision. An employee in an administrative capacity is one who is:

(1) Compensated on a salary or fee basis of at least $455 per week;

(2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

(3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R § 541.200.

The first prong is met as Plaintiff earned an annual salary of $55,000 per year. (Pl. Dep. 46:16-46:21). This equates to $1,057.69 per week. (Pl. Dep. 46:21).

i.  **Plaintiff's Primary Duty Involved the Performance of Office or Non-Manual Work Directly Related to the Management or General Business Operations of Defendant.**

"To qualify for the administrative exemption, an employee's primary duty must be the performance of work directly related to the management or general business operations of the employer or the employer's customers."  29 C.F.R. § 541.201(b).  "To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment."  Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as *personnel management*, *human resources*, *employee benefits* and *labor relations*.  29 C.F.R. § 541.201(b).

Courts have found that employees in a recruiting or staffing position perform work directly related to the management or business operations of their employers or their employers' clients.  In *Hudkins v. Maxim Healthcare Servs.,* the Court found that Hudkins met the second prong of the administrative exemption because the general business operation of Maxim Healthcare was to provide nurses to clients who had a need for nursing services and as a recruiter, Hudkins was responsible for overseeing the placement of nurses with Maxim Healthcare's clients.  39 F. Supp. 2d 1349, 1350 (M.D. Fla. 1998).  Likewise, in *Andrade v. Aerotek, Inc*., plaintiff, who was a recruiter, was found to be performing work in the functional areas of personnel management and human resources where she interviewed candidates, negotiated pay, including holiday and vacation pay, and helped manage the contractors once they were hired.  700 F. Supp. 2d 738, 746 (D. Md. 2010).  *See also* Dep't of Labor Op. Ltr., 2000 DOLWH LEXIS 10 (Dec. 8, 2000) (advising that university technical recruiters who

screened, tested and interviewed applicants for employment, and made personnel recommendations to hiring managers, were engaged in work directly related to management policies or business operations of their employer.); *Goff v. Bayada Nurses, Inc.,* 424 F. Supp. 2d 816, 824 (E.D. Pa. 2006) (holding that the job of a supervisor at a provider of in-home nurses who matched nurses to patients and was involved in case managing to ensure that the employee retains a positive relationship with the client was directly related to the management or business operations of the employer or its clients); *Drake v. Aerotek, Inc.,* 14-cv-216-bbc, 2016 U.S. Dist. LEXIS 1597, *16-18 (W.D. Wis. Jan. 7, 2016) (plaintiff's job duties of recruiting and hiring new employees related directly to the business operations of either defendant or its customers and was the core of defendant's business).

Here, Defendant is a professional recruiting company that provides employee-locating services to its clients.  (Complaint ¶ 13).  Defendant hired Plaintiff as a Senior Recruiting Manager. (Pl. Dep. 29:15-20).  Plaintiff was required to locate qualified nurse recruits to fill open positions.  (Dkt. 1, ¶16).  Plaintiff's primary duties involved recruiting nurses, screening nurses, interviewing them, communicating with them regarding pay and benefits, setting pay and housing allowances (both of which would impact the gross profit to the Company), executing contracts between the nurse and the Company, and supervising nurses.  (Pl. Dep. 59:14-60:5, 79:3-5, 89:5-8, 109:11-25, 116:8-16, 133:19-23, 99:19-23; 100:2-22).  Plaintiff's job duties clearly involve work in the functional areas of personnel management, human resources, employee benefits and labor relations.  *See* 29 C.F.R. § 541.201(b).  As such, Plaintiff's primary duty meets the requirement that such office or non-manual work be directly related to the management or general business operations of the employer's clients.

**ii.** **Plaintiff's Primary Duty Included the Exercise of Discretion and Independent Judgment with Respect to Matters of Significance.**

With regard to the third prong, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered.  The term 'matters of significance' refers to the level of importance or consequence of the work performed.  29 C.F.R. § 541.202(a).  Factors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance include, but are not limited to: whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.  29 C.F.R. § 541.202(b).

"Employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level."  29 C.F.R. § 541.202(c).  "Thus, the term "discretion and independent judgment" does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review."  *Id.*  "The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action."  *Id.*  "The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised

or reversed after review does not mean that the employee is not exercising discretion and independent judgment." *Id.*

In *Hudkins,* the Court found that Hudkins, a recruiter, exercised discretion and independent judgment in undertaking the following tasks: (1) recruiting nurses capable of providing nursing services to the company's clients; (2) placing nurses who would provide the best services to the company's clients; (3) approving higher rate of pay for nurses when the occasion demanded it in order to ensure the placement of the most capable nurses with the company's clients; (4) counseling and disciplining nurses who did not provide good services to the company's clients; and (5) participating in the termination of nurses who did not provide good services to the company's clients.  39 F. Supp. 2d 1349, 1350 (M.D. Fla. 1998).

Likewise, in *Andrade v. Aerotek, Inc.,* the Court found that although plaintiff-recruiter did not have the power to make ultimate employment decisions for defendant's clients, she exercised discretion and independent judgment because she developed her own recruiting strategies, compared contractors' skills to the applicable job descriptions, interviewed candidates, negotiated pay and sent candidates whose personalities made them a good fit to her Account Managers.  700 F. Supp. 2d 738, 747-748 (D. Md. 2010); *see also Gonzales v. Barrett Bus. Servs., Inc.*, No. CV-05-0104-EFS, 2006 U.S. Dist. LEXIS 36661, at *21 (E.D. Wash. June 6, 2006) (using FLSA standards to interpret a parallel Washington statute and concluding an employee who performed a range of recruitment, hiring, placement, and supervisory duties exercised discretion and independent judgment).

Here, Plaintiff's job clearly involved the exercise of independent discretion and judgment on matters of significance.  Plaintiff's primary job duty was to effectively recruit,

interview, hire and place qualified candidates with Defendant's clients. (Pl. Dep. 133:19-23). Plaintiff worked under very little supervision and could make decisions and accomplish tasks without prior approval. (Pl. Dep. 31:12-13, 100:10-22, 101:15-19). Plaintiff would screen candidates, interview them and match them to open positions by analyzing the candidates' strengths, weaknesses, work history and experience. (Pl. Dep. 56:15-57:7, 58:12-18; 78:12-15, 79:3-5; 79:14-20, 81:10-82:12, 82:23-25, 92:21-24, 93:22-94:10, 101:15-19, 16:23-25, 122:5-21). Plaintiff would select the nurse that she felt was the best fit for a job from a group of candidates. (Pl. Dep. 121:11-17). Plaintiff would prepare pay packages for nurses (Pl. Dep. 116:8-16) and could increase or decrease hourly rates of pay and housing allowances, both of which would impact the gross profit to the company. (Pl. Dep. 109:11-25). Plaintiff would also prepare and execute the contract between Defendant and the nurse. (Pl. Dep. 87:23-88:2, 97:1-24, Exhibit 9). After Plaintiff successfully placed a nurse with a client, Plaintiff supervised the nurse (who was an employee of Defendant) by overseeing that they reported to their assignment, communicating with nurses regarding any issues they had while onsite and being the point of contact for non-clinical issues, such as payroll or extending contracts. (Pl. Dep. 31:12-33:8, 100:23-101:14). Plaintiff also counseled nurses for non-clinical issues such as attendance problems. (Pl. Dep. 99:19-23; 100:2-22).

Because Plaintiff meets the three factors of the administrative exemption test, summary judgment should be granted in favor of Defendant as Plaintiff was an exempt employee under the FLSA and is not be eligible for overtime pay.

**C. <u>Defendant is Not Liable Under the FLSA Because it Relied on Letters from the DOL and Advice from Counsel in Determining Plaintiff's Status as an Exempt Employee.</u>**

The Court should grant summary judgment in favor of Defendant because the record evidence proves that Defendant's actions in classifying Plaintiff as an exempt employee were in good faith reliance and conformity with written administrative regulations and interpretations of the DOL.  The Eleventh Circuit applies a good faith defense as an objective test that **completely bars actions** for violations of the overtime provisions of the FLSA.  *Ballehr v. Ctrs.*, 2009 U.S. Dist. LEXIS 137219, at *16 (M.D. Fla. Nov. 10 2009).  The good faith defense provides:

> [N]o employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the Fair Labor Standards Act of 1938, as amended [29 U.S.C.A. § 201 et seq.], . . . if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the agency of the [Administrator of the Wage and Hour Division of the DOL], or any administrative practice or enforcement policy of such agency with respect to the class of employers to which he belonged. Such a defense, if established, shall be a bar to the action or proceeding.

29 U.S.C. § 259(a).

The good faith defense applies in this case.  First, Defendant's decision to classify Plaintiff's position as exempt was in conformity with and in reliance on two DOL Opinion Letters that Defendant relied on when making the decision that Plaintiff's position was exempt under the FLSA.  Exhibit "B," No. 15.  Defendant learned of DOL Opinion Letter FLSA2005-45 from Bob Style, Esq. and contacted the DOL, which confirmed the validity of the opinion letter.  (*Id.*).  After attending a seminar addressing wage and hour issues, Defendant researched and found DOL Opinion Letter FLSA2009-31 (renumbered FLSA2018-12).  (*Id.*).  Defendant relied upon these Opinion Letters from the DOL in classifying its Senior Recruiting Managers, including Plaintiff, as exempt.

According to the 2005 Opinion Letter, Company X, a temporary staffing agency, sought an opinion as to whether Staffing Managers, who place temporary labor with other companies, met the administrative exemption.  See Exhibit "E."  The DOL found that in performing the Staffing Managers' primary duty of recruiting, hiring and managing the temporary labor pool of Company clients, Staffing Managers perform work in the functional areas of personnel management, human resources and labor relations and thus, perform office or non-manual work directly related to the management or general business operations of the employer's clients.  *Id*. The 2005 Opinion Letter further provides that Staffing Managers who recruit, interview, hire and recommend placement of employees to particular assignments; manage the client's temporary labor pool; provide advice on personnel issues; handle complaints; resolve grievances; and terminate employees on behalf of the client's management, exercise the requisite discretion and independent judgment with respect to matters of significance, and thus qualify as exempt employees.  *Id*.

Here, according to Plaintiff, she was <u>primarily</u> responsible for recruiting, interviewing and recommending placement of nurses.  (Pl. Dep. 133:19-23).  Plaintiff developed and maintained candidate sources and generated candidate leads (Pl. Dep. 59:14-60:5).  She would screen candidates using their application against the job posting to determine if they met the qualifications for the position (Pl. Dep. 58:12-18, 92:21-24, 93:22-94:10, 101:15-19), then she would contact candidates regarding availability and location preferences (Pl. Dep. 76:16-19) before deciding whether to interview candidates for the positions (Pl. Dep. 79:3-5).  Plaintiff would communicate with candidates regarding pay and benefits (Pl. Dep. 89:5-8), and prepare pay packages (Pl. Dep.  116:8-16), with the ability to increase or decrease hourly rates of pay

and housing allowances, both of which would impact the gross profit to the company.  (Pl. Dep. 109:11-25).  Plaintiff would prepare and execute a contract between the Company and the nurse, who was then considered an employee of Defendant.  (Pl. Dep. 87:23-88:2, 97:1-24, Exhibit 9).  Plaintiff supervised the nurses by overseeing that they reported to their assignment, communicating with nurses weekly or bi-weekly to ensure they were at work and did not have any issues, being the point of contact for non-clinical issues such as payroll or extending contracts.  (Pl. Dep. 30:12-33:8, 100:23-101:14).  Plaintiff counseled and disciplined nurses and terminated their assignments (Pl. Dep. 99:19-23; 100:2-22).

Plaintiff's own testimony regarding her job duties demonstrates that her position is akin to the position described in the 2005 Opinion Letter which demonstrates that Defendant acted in good faith when classifying Plaintiff's position as exempt based on the position being similar to the position described in the 2005 Opinion Letter.

Similarly, in the 2009 Opinion letter, Consultants where found to be exempt administrative employees where their primary duties involved screening, interviewing, and recommending nurses for placement at hospitals; supervising and counseling the nurses to resolve housing issues and timeliness of payroll; and addressing concerns regarding nurses' attendance problems directly related to the functional areas of personnel management and human resources.  Exhibit "F."  The 2009 Opinion Letter further provides that Consultants who screen, interview, hire and recommend placement of employees to particular assignments, and negotiate candidates' compensation and benefits packages, exercise the requisite discretion and independent judgment with respect to matters of significance to qualify them as exempt administrative employees.  *Id*.

As discussed above, Plaintiff's job duties included each of the duties referenced in the 2009 Opinion Letter. Plaintiff had discretion and independent judgement with regard to negotiating pay rates and benefits packages (Pl. Dep. 116:8-16), screening and interviewing applicants (Pl. Dep. 79:3-5, 92:21-24, 93:22-94:10, 101:15-19), and providing advice to recruits after they had been placed. (Pl. Dep. 30:12-33:8, 100:23-101:14). Defendant was acting in good faith reliance and conformity with the DOL Opinion Letters in determining that Plaintiff was an exempt employee based on all of her job duties and responsibilities. Because Defendant was acting in good faith reliance on the DOL Opinion letters, Plaintiff's claim is completely barred and Defendant cannot be subject to liability. As such, summary judgment in favor of Defendant is appropriate.

**D.** <u>**Sanctions are Warranted in this Case.**</u>

Sanctions are appropriate in this case under 28 U.S.C. § 1927 and through the Court's inherent powers because Plaintiff and her counsel have acted in bad faith and continued to pursue this matter despite Plaintiff's fraud upon this Court, evidence that Defendant acted in good faith in classifying Plaintiff's position as exempt, and Plaintiff's own testimony which clearly shows she was exempt under the FLSA. A federal court has the inherent power to sanction a litigant and counsel for bad-faith conduct. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-51 (1991) (court appropriately relied on its inherent power in imposing sanctions when the offending parties practiced a fraud upon the court); *Herard v. ATN Rest., Inc.*, 2008 U.S. Dist. LEXIS 5217, at *10 (S.D. Fla. Jan. 8, 2008) ("the Court certainly possesses the inherent power to assess costs against an attorney as a sanction."). A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process,

including where a party has acted vexatiously, wantonly, or for oppressive reasons. *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995). A determination of bad faith is warranted where an attorney knowingly or recklessly pursues a frivolous claim or engages in litigation tactics that needlessly obstructs the litigation of non-frivolous claims. *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003).

Despite being provided with voluminous evidence clearly showing that Plaintiff was properly classified as exempt (including Plaintiff's own testimony showing her job duties meet the test for the exemption), that Defendant acted in good faith reliance on two DOL opinion letters that found positions almost identical to Plaintiff's to be exempt under the FLSA, and that the maximum number of overtime hours Plaintiff could have worked was only 0.008% of the overtime she was alleging, Plaintiff and her counsel continued to pursue her frivolous and unsupported claims seeking overtime compensation for which Plaintiff is not entitled. Such conduct is in bad faith, degrades the judicial system and should not be tolerated by this Court. Sanctions should be imposed against Plaintiff and her counsel, including all attorneys' fees and costs incurred by Defendant for having to defend this matter.

### E. Any Recoverable Damages Should Not Exceed 14 hours and 48 minutes of Alleged Overtime.

Should the Court decline to find Plaintiff was properly classified as an exempt employee, Defendant should be granted partial summary judgment finding that the maximum amount Plaintiff could recover in this case is no more than 14 hours and 48 minutes of overtime, for the reasons explained above.

### F. Plaintiff Cannot Recover Liquidated Damages as Defendant Acted in Good Faith in Classifying Plaintiff as Exempt.

Courts have discretion to withhold an award of liquidated damages where it is found that the employer has acted in good faith and had reasonable grounds for believing that their classification was not a violation of the FLSA.  29 U.S.C. § 260.  To prove good faith, the employer must prove both subjective and objective good faith, meaning (1) that its actions were taken in a good faith belief that they did not violate the law and (2) that it had reasonable grounds for believing that its actions were not in violation of the law.  *See* 29 U.S.C. § 260; 29 C.F.R. § 790.22(b); *Rodriguez v. Farm Stores Grocery, Inc*., 518 F.3d 1259, 1272 (11th Cir. 2008); *Hernandez v. Tadala's Nursery, Inc*., 34 F. Supp. 3d 1229, 1246 (S.D. Fla. 2014).

The good faith defense clearly applies in this case.  As explained above, Defendant has undergone numerous efforts to obtain information from various sources to ensure that its payroll practices comply with the FLSA, including ensuring that its Senior Recruiting Managers are properly classified as exempt under the FLSA.  See Exhibit "B," No. 15.  Defendant has analyzed and relied on DOL Opinion Letters in classifying Plaintiff's position as exempt.  *Id*. Defendant has been a member of the Employers Association and utilized wage and hour information, seminars and other resources.  *Id*.  Defendant has also been a part of the National Association of Personnel Services (NAPS) which offers two nationally recognized certifications: the Certified Personnel Consultants (CPC) and the Certified Temporary Consultant (CTS), both of which are held by Ms. Millhouse, President of CEO, Inc.  *Id*. Furthermore, Defendant has obtained legal updates and wage and hour information from People 2.0, CBIZ Human Capital Services, American Staffing Association, Legal Counsel of National Association of Personnel Services, Staffing Industry Analysts and EmployDrive.  *Id*.

Furthermore, Defendant has sought legal advice from attorneys and attended many legal and legislative webinars over the years regarding wage and hour topics.  Exhibit "B," No. 14. Defendant has had its Employee Handbook, including its wage and hour policies, reviewed and updated by Mark Kerfoff, Esq. on more than one occasion, including in November 2015.  *Id.* During the past 22 years, Defendant has not been sued nor investigated by the DOL. Exhibit "B," No. 9.  Aside from Plaintiff's lawsuit, Defendant has never been sued for unpaid wages or overtime compensation and it has never received a demand letter for unpaid overtime compensation.  *Id.*

Should this Court find  that Plaintiff was not properly classified as exempt under the FLSA, liquidated damages should not be awarded as Defendant clearly had a good faith basis for believing it correctly classified Plaintiff as an exempt employee under the administrative exception.

## CONCLUSION

Based on the foregoing, Defendant respectfully requests that the Court enter an Order dismissing Plaintiff's Complaint on grounds that Plaintiff has committed fraud upon the Court. In the alternative, Defendant is entitled to summary judgment as to Plaintiff's Complaint in its entirety because the evidence establishes that Plaintiff was properly classified as a non-exempt employee entitled to overtime pay and Defendant acted in good faith by relying on DOL opinion letters and legal advice.  Therefore, Plaintiff's claim for unpaid overtime fails and this Court should grant summary judgment in favor of Defendant.  Alternatively, the Court should grant partial summary judgment in Defendant's favor finding that Plaintiff cannot recover damages for overtime in excess of 14 hours and 48 minutes, and cannot recover liquidated damages.

Respectfully submitted,

**_/s/ Kristyne E. Kennedy_**
Kristyne E. Kennedy, Esquire
Florida Bar No.: 0194700
Jessica DeBono Anderson, Esquire
Florida Bar No.: 58503
Scott A. Shelton
Florida Bar No.: 36486
COLE, SCOTT & KISSANE, P.A.
Tower Place, Suite 400
1900 Summit Tower Blvd.
Orlando, FL 32810
Tel.: (321) 972-0028
Fax: (321) 972-0099
Email: Kristyne.kennedy@csklegal.com
Email: jessica.anderson@csklegal.com
Email: jillian.sotomayor@csklegal.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of June, 2019, a true and correct copy of the foregoing has been furnished by electronic filing with the Clerk of the court via CM/ECF, which will send notice of electronic filing to all counsel of record.

**_/s/ Kristyne E. Kennedy_____**