# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**CAROLYN DAVIS,**

> **Plaintiff,**

**v.**                                        **Case No:  6:18-cv-695-Orl-WWB-DCI**

**CEO RECRUITING, INC.,**

> **Defendants.**

---

## REPORT AND RECOMMENDATION

This cause comes before the Court for consideration without oral argument on the following motions:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. 40)** |
| **MOTION:** | **DEFENDANT'S MOTION TO DISMISS FOR FRAUD UPON THE COURT, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT (Doc. 41)** |
| **FILED:** | **June 28, 2019** |

**THEREON** it is **RECOMMENDED** that the motions be **DENIED**.

Plaintiff initiated this case under the Fair Labor Standards Act (FLSA) with a one count Complaint seeking recovery for unpaid overtime compensation. Doc. 1. The issue in this case is whether Defendant properly designated Plaintiff as exempt from overtime pay during her employment. The parties have each moved for summary judgment (Docs. 40; 41) and have filed their respective responses in opposition. Docs. 48; 49. Defendant has also filed a Reply to Plaintiff's Response. Doc. 53. Further, the parties have filed a Joint Stipulation of Agreed Material

Facts.  Doc. 51.  Upon review, the undersigned recommends that both Motions for Summary Judgment be denied.  The undersigned recommends that Defendant's alternative request for dismissal on the basis of fraud be denied as well.

I.      **Background**

        A.  **Undisputed Material Facts**

        The parties have submitted a Joint Stipulation of Agreed Material Facts.  Doc. 51. Accordingly, the following facts are undisputed.  Defendant is a professional recruiting company that provides employee-locating services to its clients.  Doc. 51 at 1.  Defendant's corporate headquarters is located in Charlotte, North Carolina and the standard corporate hours were from 8:00am (EST) to 5:00pm (EST). *Id.* at 1, 4.  Plaintiff worked for Defendant as a senior nurse recruiting manager from approximately February 2015 through September 2016.  *Id.* at 1.  Plaintiff was required to locate qualified nurse recruits to fill open positions.  *Id.*  Plaintiff's job duties included generating candidate leads and developing and maintaining candidate sources.  *Id.* at 2. Plaintiff was primarily responsible for recruiting, interviewing and recommending placement of nurse candidates.  *Id.*  Plaintiff would contact candidates regarding availability and location preferences.  *Id.* at 3.  Plaintiff was responsible for evaluating each nurse's skill set and licenses in determining whether to submit them for a position.  *Id.* at 2.  Plaintiff was responsible for screening candidates and matching them to open positions, by analyzing candidates' strengths, weaknesses, work history, and experience.  *Id.* at 3.

        Plaintiff's job duties included communicating with candidates regarding any outstanding information and documentation needed to complete the application.  *Id.*  Plaintiff would also obtain professional references from candidates and would contact the references to verify employment and work performance.  *Id.*  Plaintiff would select the nurse that she felt was the best fit for a job

from a group of candidates.  *Id*.  Plaintiff would clarify job requests with account managers.  *Id*.

Plaintiff would counsel nurses on non-clinical issues (which were issues that do not involve patient

care), such as tardiness and attendance.  *Id*.

Plaintiff's job duties included preparing pay packages for nurses and communicating with

candidates regarding pay and benefits.  *Id*.  Plaintiff would increase or decrease hourly rates of pay

and housing allowances, both of which would impact the gross profit to the company.  *Id*.  Plaintiff

did not have the discretion on what health insurance benefits were available to nurses.  *Id*. at 4.

Plaintiff was also responsible for preparing and executing contracts between Defendant

and the nurses.  *Id*. at 3.  Plaintiff, however, did not play a role in determining the suggested length

of a contract.  *Id*. at 4.  The recruiting manager could not finalize a contract until the hiring

manager/hospital interviewed the candidate.  *Id*.

Defendant maintains a computerized applicant tracking system (API) that Plaintiff used to

track all of the work that she performed.  *Id*. at 2.  All leads were put into API and Plaintiff was to

contact the leads assigned to her.  *Id*.  Plaintiff logged her work as she performed a task.  *Id*. All

activity was documented in API.  *Id*.

During her employment, Plaintiff earned $55,000 per year which equals $1,057.69 per

week.  *Id*.  Plaintiff was aware that she was classified as a salaried employee.  *Id*.  On May 5, 2018,

Plaintiff filed this action alleging that she routinely worked more than forty hours per week for

Defendant and was entitled to overtime compensation because she was misclassified under the

FLSA.  *Id*. at 2.  On November 27, 2018, Plaintiff filed sworn Answers to the Court's

Interrogatories stating that from May 5, 2015 to September 5, 2017 she worked approximately

fifteen hours of overtime per week.  *Id*.  Plaintiff signed the Answers and verified under oath that

the answers were true and correct.  *Id*.  In response to number 12 of Defendant's interrogatories to

Plaintiff, also under oath, Plaintiff swore that her damages were based on working fifteen hours of overtime per week. *Id*.

### B.      Plaintiff's Statement of Facts

Plaintiff adds facts that she contends are undisputed. Doc. 40 at 2-3. Plaintiff states that Defendant conducts monthly budget meetings with Deborah Millhouse and Randy Hollaran as attendees, and Managers Craig Matijow and Jenny Massinello would provide budget information for their respective departments. *Id*. at 2.

Plaintiff states that she worked for Defendant remotely from home in Florida and she received a commission in addition to her annual salary. *Id*. Plaintiff states that she was assigned clients that were based on the west coast and operated under Pacific Standard Time. *Id*. at 4. Plaintiff communicated with nursing candidates after 5:00pm Eastern Standard Time. *Id*. Plaintiff was expected to exceed productivity guidelines, including by making 75 plus calls per day. *Id*. Clients started to get upset that Plaintiff stopped taking their calls after 5:00pm. *Id*.

Plaintiff used leads obtained from third-party vendors to contact potential nurse candidates. *Id*. at 3. The hourly rates that Plaintiff negotiated with prospective nurse candidates were rates dictated by the third-party suppliers and Defendant. *Id*. As a senior recruiting manager, Plaintiff was limited to a target profit range of 15 to 20% when negotiating with nurse candidates, and all rates had to be approved by someone other than Plaintiff. *Id*.[1] Plaintiff states that recruiting manager's job duties are "essentially primarily a sales job." *Id*.[2] Plaintiff asserts that she never

---

[1] The undersigned recognizes that Defendant argues that the approval of the rate as Plaintiff characterizes it is not an undisputed fact. Defendant cites to Randy Hollaran's deposition which provides that Plaintiff did not need approval of the negotiated rate. Doc. 49 at 2.

[2] In the opposition, Defendant disputes this statement arguing that Plaintiff never testified that her job involved sales work and her reference to Mr. Matijow's testimony regarding sales is a mischaracterization. Doc. 29 at 9-10.

participated in budgeting or accounting processes, duties related to legal, regulatory compliance or payroll. *Id.* Tasks such as budgeting, accounting, legal, regulatory compliance, payroll, finance, public relations, computer/internet administration, and human resource issues are handled by CEO management typically out of the home office in Charlotte, North Carolina. *Id.* at 4. The third-party facilities make the determination as to whether a nurse should be hired and fired, and the recruiter simply follows through to terminate the working relationship. *Id.*[3]

### B.   Defendant's Statement of Facts

The majority of the facts set forth in Defendant's Motion are the same as those presented in the Joint Stipulation of Agreed Material Facts. *See* Docs. 41 at 3-8, Doc. 51. Defendant adds that Plaintiff testified that she worked from 7:00am to 7:30am and 6:00pm to 9:00pm Monday through Friday and it was not uncommon for her to work on Saturdays and Sundays. Doc. 41 at 4. With respect to the API system, Defendant states that all time Plaintiff spent working is accurately reflected in API, and the time stamps in API and on her emails show all time that she worked. *Id.* Defendant states that Plaintiff supervised nurses, employed by Defendant, by: overseeing that they reported to their assignment; communicating with nurses weekly or bi-weekly to ensure that they were at work and did not have issues; and being the point of contact for non-clinical issues such as payroll or extending contracts. *Id.* at 5.[4]

---

[3] In support of these facts, Plaintiff cites to deposition excerpts for Deborah Millhouse, Randy Hollaran, Craig Matijoy, and Jenny Massinello. Doc. 40 at 2-4.

[4] Defendant also includes a lengthy discussion of facts related to its efforts to obtain information from various sources to ensure that it complied with the FLSA. *Id.* at 5-8. The undersigned will address these facts below in relation to the discussion of Defendant's good faith defense.

## II.     Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party asserting that a fact cannot be or is genuinely disputed must support that assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c).  "Unsworn and conclusory allegations are insufficient to support summary judgment."  *Silk v. Albino*, 2007 WL 853752, at *1 (M.D. Fla. Mar. 19, 2007) (citing *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991)); *but see* 28 U.S.C. § 1746 (permitting in some circumstances the use of written, unsworn declarations subscribed to as true under penalty of perjury).

The moving party bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the record that demonstrate the absence of a genuinely disputed issue of material fact.  *U.S. v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "Once the moving party makes the required showing, the burden shifts to the non-moving party to rebut that showing by producing affidavits or other relevant and admissible evidence beyond the pleadings."  *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citations omitted).  To satisfy its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S.

574, 586 (1986).   The non-moving must go beyond the pleadings and "identify affirmative evidence" that creates a genuine dispute of material fact.   *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998).   However, the non-moving party need not produce opposing evidence if the evidence in support of the motion does not establish the absence of a genuine issue of material fact.   *See Adickes v. S.H. Kress Co.*, 398 U.S. 144, 159-60 (1970).

In determining whether a genuine dispute of material fact exists, the court must view the evidence and draw all factual inferences therefrom in a light most favorable to the non-moving party and must resolve any reasonable doubts in the non-moving party's favor.   *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007).   Summary judgment should only be granted "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]"   *Matsushita*, 475 U.S. at 587.

## III.    FLSA – Administrative Exemption

The FLSA provides that employees are entitled to receive overtime pay at one and one-half times their regular rate for all hours worked in excess of forty hours per week. 29 U.S.C. § 207(a)(1).   The FLSA, however, provides that an employee who is employed in a bona fide administrative capacity is exempt from the FLSA's overtime-pay requirement.   *Id.* § 213(a)(1).   An exemption is "applied only to those clearly and unmistakably within the terms and spirit of the exemption."   *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1269 (11th Cir. 2008) (quotation omitted).   Exemptions are narrowly construed against the employer, who bears the burden of proving that an employee is exempt from the FLSA's overtime provision.   *Abel v. S. Shuttle Servs., Inc.*, 631 F.3d 1210, 1212 (11th Cir. 2011).

Thus, for an employer to prevail on the basis of an exemption, it must prove the applicability of the exemption by "clear and affirmative evidence."   *Klinedinst v. Swift Invs., Inc.*,

260 F.3d 1251, 1254 (11th Cir. 2001) (quotation omitted).  The administrative exemption applies if: 1) the employee is compensated on a salary or fee basis not less than $455 per week; 2) the employee's "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers;" and 3) the employee's "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200(a).

IV.    **Discussion**

A.  **Plaintiff's Motion for Partial Summary Judgment**

Plaintiff moves for partial summary judgment and the Court enter judgment in her favor. Doc. 40.  The undersigned concludes that she is not entitled to relief.[5]  It appears that there is no dispute over the first prong of the administrative exemption because the parties agree that Plaintiff was an employee compensated on a salary in excess of $455.00 per week.  Doc. 51 at 1.

The parties dispute, however, whether Plaintiff's work satisfied the remaining two prongs of the exemption.  The undersigned first considers whether the evidence creates a genuine issue of material fact regarding the second prong of the test for the administrative exemption – whether Plaintiff's primary duty was the "performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers."   The undersigned finds that a genuine issue remains.

With respect to the second prong, Plaintiff contends that she is not exempt because her primary duty was "production work" that was not "directly related to management."  Doc. 40 at 6.

---

[5] While the parties have filed cross-motions for summary judgment, the undersigned will address Defendant's motion separately because it raises additional arguments regarding good faith and the calculation of hours.  The analysis in this section and citations regarding the genuine issue of fact will still relate to both parties' motions and their responses in opposition to the motions.

A "primary duty" is defined as "the principal, main, major or most important duty that the employee performs." *Id.* § 541.700(a).  A "[d]etermination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." *Id.*  The regulations provide the following non-exclusive list of factors to consider in determining an employee's primary duty: 1) the importance of the employee's primary duty compared with other duties; 2) the amount of time the employee spends on the primary duty; 3) the employee's freedom from direct supervision; and 4) the relationship between the employee's salary and the wages paid to other employees for the other duties performed by the employee.  *Id.*  The amount of time an employee spends performing exempt work serves as a guide but is not the sole consideration when evaluating an employee's exempt status. *Id.* § 541.700(b).

Plaintiff argues that this prong is not met because her work was "on the production side of the administrative/production dichotomy and not directly related to management."  Doc. 40 at 8.  In support of this contention, Plaintiff focuses on the fact that she worked from home in Florida; she did not attend the regular corporate meetings in Charlotte, North Carolina; she placed and sourced candidates with third parties; her negotiations with nurses regarding pay were set by a scale range previously established by Defendant and the customer; and she did not set company policy.  *Id*. at 7-9.

Plaintiff states that that she reviewed resumes from candidates that were sourced from third-party vendors and explains that she uploaded daily status reports to an online portal.  *Id*. at 7.  Plaintiff describes her negotiating as something operated on a small pay scale range previously decided by Defendant and the customer.  *Id*.  Plaintiff asserts that her negotiations with the nurses regarding pay was limited and subject to profit margin guidelines.  *Id*. at 9.

On the other hand, in its Motion for Summary Judgment and opposition to Plaintiff's request for the same, Defendant argues that Plaintiff's primary duty involved the performance of office and non-manual work that was directly related to management or the general operations of the company.  In support of its position, Defendant concentrates on Plaintiff's ability to screen and match candidates to open positions; analyze candidate strengths and weaknesses along with work history and experience; and select nurses that she thought best fit a job.  Docs. 41 at 15; 49 at 7. Defendant emphasizes Plaintiff's contact with candidates and the interview process; her preparation of pay packages for nurses; the fact that she was the point of contact on non-clinical issues; and the execution of contracts between the Company and the nurses.  Doc. 49 at 7-8. Defendant disagrees that the pay range Plaintiff was required to use to negotiate the rate was "small" as Plaintiff describes.  Defendant states that the rate was set from the hospital, and from that rate, Plaintiff would negotiate the pay package.  Defendant adds that  the "floating target profit margin" was 20%, but the range was from 9% to 40%.  *Id*. at 4,  8.  Defendant provides that the testimony shows that while its company liked to maintain anywhere from a 15% to 20% marginal rate, Plaintiff had the final say.  *Id*. at 8.  Defendant also emphasizes that in addition to leads from third-party vendors, Plaintiff was able to utilize her own leads that she generated.  *Id*. at 3. Defendant concludes that Plaintiff's job duties involved work in functional areas of personnel management, human resources, employee benefits, and labor relations.  *Id*. at 11; Doc. 41 at 15.

Based on the foregoing, the undersigned finds that there is a genuine issue with respect to whether Plaintiff's duties meet the second prong of the administrative exemption.  As described, Plaintiff tries to draw attention to the aspects of her job that might be deemed as production and not related to management and the limitations of her role (e.g. her lack of discretion regarding the nurses' health benefits), while Defendant, to the contrary, targets work that it categorizes as

personnel management (e.g. interviewing nurse candidates).  As such, there is a dispute regarding the importance of Plaintiff's various duties and whether they weigh in favor of the exemption. Further, while there are undisputed facts that reflect Plaintiff's lack of freedom from direct supervision, in other respects Plaintiff had autonomy in some of her duties.  In other words, there is at least a triable question of fact as to whether Plaintiff's primary duty was exempt or non-exempt work.  Indeed, Plaintiff states in her opposition to Defendant's Motion for Summary Judgment that "there is still an issue of disputed facts as to Plaintiff's primary job duties . . . " Doc. 48 at 13.  While Plaintiff makes this statement in relation to Defendant's reliance on section 259, the undersigned agrees that a genuine issue exists.

The undersigned also finds that there is a dispute with respect to the level of discretion Plaintiff had at work.  As to the third prong, the defendant must clearly establish as uncontested fact that a plaintiff's primary duty involved "the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(3).  This generally "involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered."  *Id.* § 541.202(a).  The regulations provide the following non-exclusive list of factors to consider in determining whether an employee exercises discretion and independent judgment with respect to matters of significance:

> [W]hether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of

significance on behalf of management; and whether the employee represents the
company in handling complaints, arbitrating disputes or resolving grievances.

*Id.* at § 541.202(b). "The exercise of discretion and independent judgment implies that the

employee has authority to make an independent choice, free from immediate direction or

supervision." *Id.* at § 541.202(c). The term discretion and independent judgment, however, does

not require that the decisions at issue have a finality that goes with unlimited authority and a

complete absence of review. *Id.* The regulations also provide that the exercise of discretion and

independent judgment "must be more than the use of skill in applying well-established techniques,

procedures or specific standards described in manuals or other sources," and "does not include

clerical or secretarial work, recording or tabulating data, or performing other mechanical,

repetitive, recurrent or routine work." *Id.* at § 541.202(e).

   Here, the parties highlight different aspects of Plaintiff's job to argue for relief in their

favor. In essence, Plaintiff and Defendant (through its opposition and own motion for summary

judgment) ask that the Court to weigh the evidence, which it will not do. "Credibility

determinations, the weighing of evidence, and the drawing of legitimate inferences from facts are

jury functions, not those of a judge . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

(1986).

   For example, Plaintiff contends that "[a]lmost every action taken by the Plaintiff during

the course of her job performance had to be approved by the account manager or some other

superior." Doc. 48 at 10. Plaintiff relies on the fact that while she prepared the pay package, the

account manager determined whether an offer would be extended to the nurse candidates. *Id.*

While it is undisputed that Plaintiff counseled nurses on issues such as tardiness or attendance

(Doc. 51 at 3), Plaintiff argues that she would relay the issue to the account manager who would

advise her to speak with the nurse. Doc. 48 at 10. She describes this as "simply relaying

instructions." *Id*. In the opposition to Defendant's Motion for Summary Judgment, Plaintiff disputes that she supervised the nurses, citing to the fact that she was the point of contact for the non-clinical issues and that the nurses were not actually Defendant's employees. Doc. 48 at 3.

Defendant, on the other hand, characterizes this role as supervisory, focusing on the communications with the nurses on a weekly or bi-weekly basis. Docs. 49 at 15; 53 at 7. Defendant contends that Plaintiff "supervised" the nurses and oversaw that they reported to assignments and communicated with nurses on issues. Doc. 49 at 15. Accordingly, the parties have a dispute.

Also, with regard to Plaintiff's ability to negotiate pay rates, the parties want the Court to accept their dueling interpretations of the significance of the profit margin and its limitations. As an initial matter, Plaintiff states that she had "virtually no ability to exercise discretion or independent judgment because she was simply following standards predetermined by Defendant." Doc. 40 at 11. Defendant takes great issue with the use of the word "standard" and argues that "[n]either Plaintiff nor any other individual deposed testified that Defendant had standards that Plaintiff followed to screen, place and supervise nurses." Doc. 53 at 9. The undersigned agrees that from what can be gleaned from the evidence, it does not appear that anyone testified regarding a "standard."

Even so, there is a genuine issue of fact regarding the level of discretion that Plaintiff actually had in deriving at the nurses' pay rates. It is undisputed that Defendant receives the bill rate from the hospital. Defendant describes this as "an amount that the hospital and Managed Service Provider agreed upon in their contract." Doc. 49 at 4. Plaintiff would need to negotiate with the nurse based on that bill rate and she had a "floating target profit margin." *Id*. Clearly, Defendant views her discretion to navigate the profit margin as quite flexible based on the

percentages, but Plaintiff maintains that these figures amount to a "marginal range" within which to negotiate. That is an issue that is more properly weighed by a jury.

As with the second prong, the Court finds that genuine issues of fact exist with regard to the nature and extent of Plaintiff's workplace discretion that should not be resolved on summary judgment. The Court notes that Plaintiff cites to non-binding cases from around the country involving fund accounting specialists, sales representatives, mortgage underwriters, etc. and their status under the administrative exemption of the FLSA. Doc. 48. Defendant argues, and the undersigned agrees, that these cases are entirely distinguishable from the facts of this case. Regardless, to the extent that similarities exist, the cases do not support summary judgment because of the genuine issues of fact.

Likewise, the undersigned finds that the case Defendant relies upon in its opposition, *Hudkins v. Maxim Healthcare Servs.*, 39 F. Supp. 2d 1349 (M.D. Fla. 1998), does not demonstrate as a matter of law that Plaintiff was subject to the administrative exemption. In *Hudkins*, following a non-jury trial, the Court announced findings of fact and conclusions of law under Fed.R.Civ.P. 52 in support of its entry of judgment on behalf of the defendant. Like the instant case, the defendant provided nurses to clients with a need for services and the plaintiff worked as a recruiter. 39 F.Supp.2d at 1349-1350. While the Court in *Hudkins* provided a list of tasks that the plaintiff performed and a cursory review would appear to include some similarities, the background or facts regarding those activities is limited. As such, the undersigned declines Defendant's invitation to characterize that plaintiff's job duties as "identical" (Doc. 49 at 12) to those Plaintiff performed on behalf of Defendant.

Further, there appears to be differences between Plaintiff's duties and the recruiter in *Hudkins*, or at least an open question as to whether the tasks were identical. Unlike here, the court

in that case found that the recruiter was "required to work in an office setting," and there is no

mention of a range of pay set by the defendant and customer used to negotiate pay as is the case

here.  *See id at* 1350.  The court in *Hudkins* also found that the recruiter exercised discretion in

placing nurses who would provide the best services to the defendant's clients.  *Id*.  Even though

Plaintiff, a senior recruiting manager, interviewed the nurse candidate, it is undisputed that she had

to submit the candidate to Defendant's account manager after "she determined who is the best fit"

(Doc. 42-1 at 118), and "the recruiting manager [could not] finalize a contract until the hiring

manager/hospital interview[ed] the candidate."  Doc. 51 at 4.  So, it is unclear as to whether

Plaintiff had the same level of discretion as the recruiter in *Hudkins*.

In sum, the parties have provided no authority that persuades the undersigned that, on the

record presented, Plaintiff is or is not exempt under the FLSA as a matter of law.  While *Hudkins*

is from this District and seems the most analogous out of the cited authority included within the

filings, the undersigned finds that the same factors weighed in that decision following a bench trial

are in dispute in this case.

Because neither party has respectively demonstrated that Plaintiff's work met or did not

meet the requirements of all three prongs of the administrative exemption based on the undisputed

facts, the undersigned recommends that summary judgment be denied.

## B. Defendant's Motion to Dismiss for Fraud Upon the Court or, in the Alternative, Motion for Summary Judgment

### 1.      Defendant's Motion to Dismiss

Both parties move for summary judgment, but Defendant also requests dismissal of the

case because Plaintiff allegedly committed a fraud upon the Court.  Doc. 41.  Defendant alleges

that Plaintiff repeatedly lied under oath by claiming that she worked 1,875 hours of overtime even

though the maximum amount she could have worked was less than 15 hours.  *Id.* at 9.  Defendant moves for dismissal pursuant to the Court's inherent power to inflict this sanction and 28 U.S.C. § 1927.  *Id.* at 22.

Indeed, the Court has "an inherent power to regulate litigation and sanction the parties, as well as their counsel, for abusive practices."  *Brandt v. Magnificent Quality Florals Corp.*, 2009 WL 899925, at *4 (S.D. Fla. Mar. 31, 2009), *aff'd*, 371 F. App'x 994 (11th Cir. 2010) (citation omitted).  This includes the "inherent power to sanction a fraud upon the Court, which sanction can include dismissal of a case." *Gyasi v. M/V "ANDRE*," 2008 WL 162644, at *2 (S.D. Fla. Jan. 16, 2008) (citation omitted).  "Invocation of the Court's inherent power requires a finding of bad faith." *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995) (citation omitted).

Here, Defendant contends that Plaintiff made false statements under oath in the answers to the Court's interrogatories by maintaining that between May 5, 2015 and September 5, 2017, she worked 15 hours of overtime per week.  Doc. 41 at 9, citing Doc. 29.  Defendant also points out that Plaintiff testified at her deposition that she worked from 7:00am to 7:30am and 6:00pm to 9:00pm Monday through Friday, and it was not uncommon to work on the weekends.  Doc. 41 at 9, citing to Pltf's Depo. 101-102, 103-104.  Defendant argues that Plaintiff has repeatedly offered sworn testimony that was false claiming that she worked at least 1,875 hours of overtime during her employment.  Doc. 41 at 9.

Defendant states that Plaintiff testified during her deposition that she tracked all of her work and activity in API, including each time she made contact with an applicant or employee, the method of communication, the reason she contacted an applicant or employee, the method of communication, the reason for contact, whether she left a message, if she followed up, and if she created a profile for a referral.  Defendant states that her testimony shows that Plaintiff

contemporaneously logged her activity while doing a task and all of her time spent working was accurately reflected in API. *Id.*

Defendant states that it calculated Plaintiffs' hours worked by utilizing the time stamps on the API records, and by taking into account the time stamp on every email Plaintiff sent during her employment. *Id.* at 10. Contrary to Plaintiff's assertions, Defendant states that of the 125 weeks worked, there were only 5 weeks during which she could have worked overtime and the total of hours is 14 hours and 48 minutes. *Id.* 10-11. Defendant claims that it produced to Plaintiff and her counsel the API reports, emails, excel spreadsheet reports which listed every time stamp, and the results of the calculations. *Id.* at 11. Defendant complains that despite this information, Plaintiff has not amended her answers to the Court's interrogatories or her sworn testimony to reflect Defendant's calculations, which means she has litigated this case demanding overtime that was not worked. *Id.* at 12. Accordingly, Defendant maintains that she has committed fraud upon the Court.

In response, Plaintiff states that there are no actual time records in this case, her claimed hours is based on an estimate because no such records exist, and Defendant's calculation is flawed. Doc. 48 at 6. Plaintiff asserts that the API was not used when she started working for Defendant, Plaintiff could not document her hours when the API system was not working, Defendant failed to look at all applicable reports, and the timestamps merely show when the task was done and not all the time spent. *Id.* Specifically, while Defendant is correct that Plaintiff testified that she contemporaneously logged her activity and her time spent was reflected in API (Doc. 51 at 2), she also testified that when the company started "the system actually wasn't up yet" and Plaintiff could not input information into the system when it was down. Doc. 42-1 at 95-96, 123-24, 130-31. As

such, Plaintiff argues that Defendant's calculation is flawed and there is no evidence of fraud. Doc. 48 at 4-6.

While the undersigned does not make a recommendation regarding the accuracy of Defendant's calculations, the undersigned still finds that there is no showing of fraud. It appears that even with Defendant's API records, there is still a dispute regarding the number of overtime hours Plaintiff actually worked. Based on her representations in her response and her deposition testimony read as a whole, there is no showing that she is "blatantly lying" to the Court as Defendant contends.

The Court notes that Defendant has filed a Reply to Plaintiff's arguments which does not persuade the undersigned to rule in its favor. Defendant states in the Reply that "[t]he API reports and excel spreadsheets incorporating all of her emails clearly show time entries from when Plaintiff was hired on April 20, 2015." Doc. 53 at 4. Accordingly, Defendant argues, Plaintiff is incorrect that API was not in use during her entire employment. However, there is no citation to the record in support of this statement. *See id*. Assuming this report is somewhere attached as an exhibit, the undersigned will not sift through the filings to find it.

Further, Defendant contends that Plaintiff testified that when the system was down, it was remedied "pretty quickly" and, therefore, any time spent working off of the system "is likely *de minimus*." Doc. 53 at 5. It is true that Plaintiff stated that when this occurred, "they got on it pretty quickly." Doc. 42-1 at 131. Plaintiff also testified, however, that she did not remember how many times the system was down during her employment and she believed "most would have been an hour," although she did not recall. Doc. 42-1 at 131. Since there is no citation to any evidence before the Court showing how many times the system was down, the undersigned is not persuaded that time spent working off the clock did not significantly impact the calculation of hours worked.

There is certainly no citation supporting the argument or any citation to authority regarding *de minimus* time periods.  As such, the Court is left with a dispute regarding the hours worked which does not support a finding of fraud.

Moreover, the Court notes that, at the deposition, Defendant showed Plaintiff a document that purportedly reflected every entry in API "made for [Plaintiff]" during her employment.  Doc. 42-1 at 65.  Plaintiff clarified during the deposition that the report did not reflect all API records and was based only on "submissions."  *Id*. at 143.  In the Reply, Defendant contends that, after the deposition, Defendant produced the complete API report with all entries for Plaintiff with an electronic version with tabs along with a subsequent report.  Doc. 53 at 3.  Defendant argues that "Plaintiff and her counsel could have easily calculated Plaintiff's hours worked from the documents produced by Defendant."  *Id*. at 3-4.  Defendant surmises that Plaintiff has provided "false and dishonest testimony on numerous occasions."  *Id*. at 6.  Defendant, however, cites to no report, affidavit, or any other evidence in the record to support the summary of events that took place after the deposition.  In other words, counsel's argument alone as stated in the Reply does not persuade the undersigned that Plaintiff has disregarded evidence that should have apparently motivated her to amend the filings in this case.

Finally, Defendant cites to no case, and the undersigned is not aware of any such authority, where a court sanctioned a plaintiff for not amending the interrogatories even if it was subsequently determined that the number of overtime hours worked was not accurate.

While there may be a vast discrepancy between the overtime hours Plaintiff claims and Defendant's calculations of the actual figure, the undersigned is not persuaded that there is a showing of fraud.  Sanctions for fraud are reserved for the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an

attorney is implicated. *Gupta v. U.S. Attorney Gen.*, 556 Fed. Appx. 838, 840-41 (11th Cir. 2014) (per curiam) (cited as persuasive authority) (citation omitted).  The undersigned does not find that is the case here.  In sum, the undersigned recommends that the Court reject Defendant's request for dismissal because there is a genuine dispute with regard to the amount of overtime owed, there is no showing of bad faith, and there is no citation to authority that would justify dismissal based on the facts of this case.

### 2.   Defendant's Motion for Summary Judgment

The undersigned recommends that Defendant's Summary Judgment is due to be denied for the same reasons discussed in relation to Plaintiff's motion.  Namely, there are genuine issues of fact with regard to the second and third prongs of the administrate exemption to the FLSA.  However, the analysis does not end there because Defendant argues that it is entitled to a good faith defense under 29 U.S.C. § 259(a), which "completely bars actions."  Doc. 41.  Defendant also requests a ruling on whether Plaintiff is entitled to liquidated damages, and requests partial summary judgment on the issue of the number of overtime hours worked.  *Id.* at 23-25.  The undersigned will address these arguments in turn but does not find a basis for summary judgment in whole or in part.

### a.   Good Faith Defense – 29 U.S.C. § 259(a)

Defendant states that in its attempt to comply with the FLSA it analyzed and relied on Department of Labor (DOL) Opinion Letters FLSA2005-45 and FLSA2009-31 (renumbered FLSA2017-12)[6] in classifying senior recruiting managers, including Plaintiff, as exempt.  Doc. 41 at 6, 19.

Title 29 U.S.C. section 259 provides, in relevant part, that:

---

[6] Defendant states that the letter was renumbered "FLSA2018-12," but the exhibit reflects that it is numbered "FLSA2017-12" and issued on December 18, 2017.  Doc. 41-6.

> no employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the [FLSA] . . . if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the agency of the United States specified in subsection (b) of this section, or any administrative practice or enforcement policy of such agency with respect to the class of employers to which he belonged.  Such a defense, if established, shall be a bar to the action or proceeding, notwithstanding that after such act or omission, such administrative regulation, order, ruling, approval, interpretation, practice, or enforcement policy is modified or rescinded or is determined by judicial authority to be invalid or of no legal effect.

29 U.S.C. § 259.

This good faith defense is an objective test that bars actions for, *inter alia*, violations of the overtime provision of the FLSA, if the employer establishes "that the act or omission complained of was (1) taken in good faith and was (2) in conformity with and (3) in reliance on a written administrative interpretation by a designated agency." *Cole v. Farm Fresh Poultry, Inc.*, 824 F.2d 923, 926 (11th Cir. 1987); *see also Int'l Ass'n of Firefighters, Local 349 v. City of Rome, Ga.*, 682 F. Supp. 522, 532 (N.D. Ga. 1988) ("The showing of objective good faith alone is insufficient: the employer must also show that it acted in actual conformity with and in reliance on written agency interpretation.") (internal citations and quotations omitted).

Defendant has not demonstrated entitled to the good faith defense at summary judgment. Defendant contends that it learned of DOL opinion letter FLSA 2005-45 from an attorney and contacted the DOL, which confirmed the validity of the letter.  Doc. 41 at 6.  Also, Defendant states that after attending a seminar it researched and found DOL opinion letter FLSA2009-31 (renumbered FLSA2018-12).  *Id.*

Furthermore, Defendant claims to be a member of the Employers Association (EA) and had attended numerous HR seminars with the association, which included wage hour topics.

Defendant states that it "obtained insight and clarification on wage and hour questions it had from the EA, including obtaining guidance and advice from Kenny Colbert, President & CEO, and Laura Hampton, Vice President." *Id*. Defendant has also been a part of the National Association of Personnel Services, and its CEO holds two recruiting and staffing industry certifications and has attended webinars on wage and hour topics. *Id*. Moreover, Defendant states that it has received legal updates and wage hour information from People 2.0, CBIZ Human Capital Services, American Staffing Association, etc. *Id*. Defendant adds that it has sought advice from attorneys on wage and hour issues, and has an employee handbook, which was reviewed by an attorney and includes wage and hour policies. *Id*.

As an initial matter, there is nothing in the section 259 language that takes into account Defendant's feedback from attorneys, attendance at webinars and seminars, employee handbooks, and certifications. Defendant has not otherwise provided case law to establish entitlement to the good faith defense under this section based on the advice of counsel or guidance from other associations and organizations. Accordingly, the undersigned will review Defendant's remaining argument with respect to its reliance on the DOL opinion letters.

With respect to the FLSA2017-12 letter, which was formerly FLSA2009-31, the undersigned finds that there is an issue of fact with regard to whether reliance was possible. The letter, dated December 18, 2017, provides:

> This letter responds to your request that the Wage and Hour Division ("WHD") reissue Opinion Letter FLSA2009-31. On January 16, 2009, then-Acting WHD Administrator Alexander J. Passantino signed the opinion letter as an official statement of WHD policy. On March 2, 2009, however, WHD withdrew the opinion letter "for further consideration" and stated that it would "provide a further response in the near future."
>
> We have further analyzed Opinion Letter FLSA2009-31. From today forward, this letter, which is designated FLSA2017-12 and reproduces below verbatim text of

Opinion Letter FLSA2009-31, is an official statement of WHD policy and an official ruling for purposes of the Portal-to-Portal Act, 29 U.S.C. § 259.

Being that Plaintiff worked for Defendant as a senior nurse recruiting manager from approximately February 2015 through September 2016 (Doc. 51 at 1), the undersigned questions whether Defendant can claim reliance on a letter that was withdrawn prior to that period. Defendant certainly has provided no authority on the issue. There is also no evidence relating to a practice or policy that was relied upon as section 259 envisions. Even if reliance on a withdrawn letter is possible, the letter relates to consultants, clinical coordinators, coordinators, and business development managers, and states that "[t]he opinion is based exclusively on the facts and circumstances described in your request. . . ." Doc. 41-6 at 5. The facts relating to the extent of Plaintiff's duties and her level of discretion are in dispute as discussed in this recommendation. As such, the undersigned concludes that a genuine issue remains with respect to the applicability of this letter to the varying facts of this case.

Likewise, while the 2005 letter relates more directly to a staffing agency and there is nothing before the Court to suggest that it has been withdrawn or rescinded, the undersigned still concludes that it does not support summary judgment in Defendant's favor. Specifically, there are differences between Plaintiff's job duties, the significance of which are in dispute, and the job duties discussed in the DOL letter.

For example, in the 2005 letter, the DOL responded to a staffing agency that employed recruiters in its efforts to "provide temporary labor in various clerical, accounting, human resource, computer and similar white collar functions." Doc. 41-5 at 1. That company's staffing managers hired and made recommendations to the client companies for placement of employees at particular assignments. *Id*. Once the employee was placed, the staffing manager continued to supervise the services of the employee with the client. *Id*. at 2. The manager also stayed in contact with the

employee and the client to evaluate the employee's performance and decide whether counseling or disciplining an employee was necessary.  *Id.*

However, as discussed, Plaintiff's recommendations regarding placement went through her account manager and not the client, and she did not determine employment needs with the client but the account manager.  Docs. 50-1 at 51; 50-3 at 10, 15, 37-38; 50-4 at 65-66.  Notably, with respect to the level of discretion, the DOL in the letter cites to WH Opinion Letters dated August 11, 1970 and October 14, 1983, and stated that "[w]hether a staffing manager exercises discretion and independent judgment within the meaning of the regulations would depend, to a great extent, on the amount of selectivity exercised in matching persons seeking employment with the requirements of the job opening and in deciding which employee to send to any particular employer for consideration, as opposed to referring to the employer several prospects who generally meet the qualifications for the job." Doc. 41-5.  In the instant case, Plaintiff argues that she did not decide which nurse would fill the position but merely submitted a candidate to the account manager for his or her determination (*See* Doc. 48 at 10; 42-1 at 74-75), while Defendant viewed the selection of the candidate as being a significant exercise of Plaintiff's discretion.  *See* Docs. 41 at 18; 50-3 at 37.

The undersigned finds that a jury should consider that evidence to decide whether the exemption or good faith defense should be applied.  For an employer to rely upon an administrative interpretation, that interpretation "must provide a clear answer to the particular situation. . . . " *Cole*, 824 F.2d 923 at 928.  The undersigned is not persuaded that the letter gives that answer.

### b.  Good Faith – 29 U.S.C. § 260

Defendant argues that Plaintiff cannot recover liquidated damages because it acted in good

faith when it classified Plaintiff as exempt pursuant to 29 U.S.C. § 260.  Title 29 U.S.C. § 260 provides an employer with a "good faith" defense to a claim for liquidated damages.  *See* 29 U.S.C. § 260 ("In any action . . . to recover . . . unpaid overtime compensation, or liquidated damages, under the [FLSA] . . . if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA] . . . the court may, in its sound discretion, award no liquidated damages. . . . ").

Here, Defendant requests that if this Court should find Plaintiff was not properly classified as exempt under the FLSA, liquidated damages should not be awarded.  Doc. 41 at 25.  Since the undersigned did not determine the issue of whether Plaintiff is exempt, there is no need to rule given the plain meaning of that request.  The undersigned adds that the issue of liquidated damages does not appear to be ripe for consideration.  The liquidated damages provision of the FLSA provides, in relevant part, that "any employer *who violates* the provisions of . . . section 207 of this title shall be liable to the employee . . . affected in the amount of their unpaid . . . overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b) (emphasis added).  Therefore, "only a violation of the FLSA results in a right to liquidated damages under the Act." *Atlanta Prof'l Firefighters Union, Local 134 v. City of Atlanta*, 920 F.2d 800, 806 (11th Cir. 1991). The undersigned recommends that the parties are not entitled to summary judgment.  In the absence of a determination of an FLSA violation, consideration of the issue of liquidated damages is premature.  *See Cusumano v. Maaquipan Int'l, Inc.*, 390 F.Supp. 1216, 1222-23 (M.D. Fla. 2005) (finding that because there was no determination that the FSLA was violated the issue of liquidated damages and the good faith defense was premature.).

### c. Calculation of Overtime

Defendant adds that if the Court should decline to find Plaintiff was properly classified as an exempt employee, Defendant should be granted partial summary judgment through a finding that the maximum amount Plaintiff could recover is no more than 14 hours and 48 minutes of overtime. Doc. 41 at 23. There is no citation to authority or analysis regarding Defendant's ability to obtain summary judgment on this limited issue and on that basis alone the request is due to be denied.

In any event, the undersigned recommends that the request should be denied because it is premature. Courts have concluded that when issues of liability must be determined at trial, motions for summary judgment on damages, which this request essentially amounts to, are premature. *See, e.g., Parker v. TaxPrep1, Inc.*, 2015 WL 4488401, at *2 (M.D. Fla. July 22, 2015) (adopting magistrate judge's recommendation that "until it is found that Plaintiffs were misclassified as exempt, the court will not need to determine the . . . extent of Plaintiffs' damages."); *Cain v. Almeco USA, Inc.*, 2013 WL 6051023, at *7 (N.D. Ga. Nov. 15, 2013) (concluding that it was premature to determine the method to calculate overtime compensation before determining whether employee qualified under administrative exemption of FLSA).

Until a jury concludes that Defendant is liable under the FLSA for failure to pay overtime compensation to Plaintiff, the undersigned recommends that a determination on how many hours of overtime Plaintiff worked should wait.

### V.    Conclusion

Accordingly, it is **RECOMMENDED** that Plaintiff's Motion for Partial Summary Judgment (Doc. 40) and Defendant's Motion to Dismiss, or in the alternative, Motion for Summary Judgment (Doc. 41) be **DENIED**.

**<u>NOTICE TO PARTIES</u>**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on October 2, 2019.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy